IN the INTEREST OF JAMES P., a person under age 18:

STATE of Wisconsin, Petitioner-Respondent,

v.

JAMES P., Appellant.†

Court of Appeals

*No. 93–0080. Submitted on briefs September 8, 1993.—Decided December 7, 1993.*

(Also reported in 510 N.W.2d 730.)

†Petition to review denied.

For the appellant the cause was submitted on the briefs of *Heidi M. Hida*, of Milwaukee.

For the petitioner-respondent the cause was submitted on the briefs of *E. Michael McCann*, district attorney, and *Timothy J. Cotter*, assistant district attorney.

Before Sullivan, Fine and Schudson, JJ.

SULLIVAN, J.   James P. appeals from a probationary provision of his delinquency dispositional order which required him to submit to blood testing to be arranged by his probation officer.[1] James argues that the trial court exceeded its authority in ordering the blood test as a condition of probation because the test has no relationship to the underlying delinquency. James also argues that the blood test constitutes an illegal search and seizure, *see* U.S. CONST. amend. IV and WIS. CONST. art. I, sec. 11, and is a violation of due process, *see* U.S. CONST. amends. V and XIV and WIS. CONST. art. I, sec. 8(1). We conclude that the trial court

---

[1] Upon James petition for a supervisory writ, this court stayed enforcement of this probationary condition by order of September 29, 1992.

did not exceed its authority or misuse its discretion by providing this condition of probation. We reject James' Fourth Amendment challenge and decline to address James' due process argument because it is undeveloped. Accordingly, we affirm.

Upon James' guilty plea to a charge of possession of a dangerous weapon by a child, contrary to sec. 948.60(2), Stats., the children's court entered a finding of guilt and adjudicated him a delinquent child. At the conclusion of the plea hearing, a probation officer told the court that a school social worker and a child protective services worker informed her that James' sister, at age 11, had a child which reportedly had been fathered either by James or James' father. At a subsequent dispositional hearing the court placed James under the supervision of the Milwaukee County Department of Probation for a period of one year and set down conditions of probation.[2] Among the conditions was the requirement that James cooperate with blood testing, to be arranged by his probation officer, to determine whether he is the father of his sister's child.

At a continued dispositional hearing the court stated its reasons for the condition. The court noted that a court report recommended home placement dur-

---

[2] This disposition is authorized by sec. 48.34(2), Stats. which allows the trial court to:

> Place the child under supervision of an agency, the department if the department approves or a suitable adult, including a friend of the child, under conditions prescribed by the judge including reasonable rules for the child's conduct and the conduct of the child's parent, guardian or legal custodian, designed for the physical, mental and moral well-being and behavior of the child.

ing the probationary period.[3] The sister also lived in the home. The court commented that it is in James' best interest to resolve the issue of his paternity now rather than wait until his sister becomes older, more sophisticated and perhaps disposed to prefer criminal charges against him after he becomes an adult.[4] The court also reasoned that if the test establishes that James is not the father of the child, that test result will remove a cloud from James' head and will facilitate living with his sister and her child. Further, the trial court explained that if his paternity is established he may be provided advice and treatment to avoid similar situations. The court concluded that the condition was reasonable and was in James' best interest.

James argues that because blood testing to determine whether he is the father of his sister's child is completely unrelated to the firearm possession offense, and because the result of the testing may subject him to another prosecution, the trial court misused its discretion and entered an order which violated James' constitutional rights.

Disposition of a child's delinquency adjudication lies in the sound discretion of the court. *See In re B.M.*, 101 Wis. 2d 12, 22-24, 303 N.W.2d 601, 607 (1981). A presumption of reasonableness supports a children's court disposition. *Cf. State v. Ledford*, 114 Wis. 2d 562, 566, 339 N.W.2d 361, 362 (Ct. App. 1983) (a presumption of reasonableness attends the trial court exercise of sentencing discretion). A court has broad discretion in imposing conditions of probation, and is limited only

[3] The report's dispositional recommendation stated: "Continued placement in the parental home under formal Supervision of the Probation Department."

[4] James was born July 10, 1976.

by the exercise of reasonableness and propriety. *State v. Heyn,* 155 Wis. 2d 621, 627, 456 N.W.2d 157, 160 (1990). The exercise of discretion requires judicial application of relevant law to the facts of record to reach a rational conclusion. *Village of Shorewood v. Steinberg,* 174 Wis. 2d 191, 204, 496 N.W.2d 57, 62 (1993).

Courts liberally construe the Children's Code to accomplish its objectives. Section 48.01(2) provides:

> **(2)** This chapter shall be liberally construed to effect the objectives contained in this section. The best interests of the child shall always be of paramount consideration, but the court shall also consider the interest of the parents or guardian of the child, the interest of the person or persons with whom the child has been placed for adoption and the interests of the public.

These objectives include, *inter alia*: "to provide for the care, protection and wholesome physical and mental development" of the child while preserving the integrity of the family; to remove a delinquent child from "consequences of criminal behavior" and to substitute "a program of supervision, care and rehabilitation"; "to keep children in their homes whenever possible"; to provide children with stable family relationships and to "assist parents in changing circumstances in the home which might harm the child or which may require the child to be placed outside the home." Section 48.01(1), Stats.

The Children's Code does not explicitly or implicitly require a child's disposition to be related to the violation that resulted in the delinquency. For example, section 48.34(8), Stats., provides that the court

683

may assess a $50 forfeiture upon a finding that such disposition serves the best interests of the child and promotes the child's rehabilitation.[5] This forfeiture may be unrelated to the nature of the offense for which the child has been adjudicated delinquent. Likewise, among the numerous other dispositional options are supervised work programs, supervised independent living situations, educational programs, and alcohol or drug treatment programs. Section 48.34(9), (10), (12) and (13), Stats. While a court determining disposition must focus on the offender, and while the court also may consider the gravity of the offense, the court is not required to focus on the nature of the offense except as mandated by statute.[6]

Thus, we reject James' argument that his delinquency disposition and its conditions must somehow be linked to the nature of his offense. Once the delinquency finding is made, the children's court has an obligation to fashion a program of care, protection and rehabilitation of the child within the scope of the Children's Code regardless of the nature of the child's offense. This is manifest from the prefatory language to sec. 48.34, Stats., which requires the judge to adopt one

---

[5] Section 48.34(8), Stats., provides in part:

(8) If the judge finds that no other court services or alternative services are needed or appropriate it may impose a maximum forfeiture of $50 based upon a determination that this disposition is in the best interest of the child and in aid of rehabilitation, except that the court may raise the maximum ceiling on the amount of the forfeiture by $50 for every subsequent adjudication of delinquency concerning an individual child. Any such order shall include a finding that the child alone is financially able to pay the forfeiture and shall allow up to 12 months for payment.

[6] See, e.g., sec. 48.34(4m), (4p), (4r), (5), (7) and (7m), Stats. (dealing with specific offenses or types of offenses).

or more of the alternatives to provide the delinquent child with a plan of care and treatment.[7] We conclude that the reasoning of the trial court in this case is consistent with the intent and purpose of the Children's Code and reflects the trial court's application to the facts of record to reach a reasonable conclusion.

Next, James argues that the mandatory blood test as a condition of probation constitutes an unreasonable search and seizure and is a violation of his constitutional due process rights. James argues that the blood test would constitute an unreasonable search and seizure because the blood test is not part of a criminal investigation and he is not under arrest. In support of his undeveloped argument, he cites two cases, *State v. Kroening*, 274 Wis. 266, 79 N.W.2d 810 (1956), and *State v. Tarrell*, 74 Wis. 2d 647, 247 N.W.2d 696 (1976), neither of which supports his position.

In *Tarrell*, the Wisconsin Supreme Court explained that conditions of probation may necessarily infringe upon a probationer's rights:

> All conditions, rules and regulations must be imposed with the dual goal of rehabilitation of the probationer and protection of the public interest. The imposition of these conditions, rules and regulations demonstrates that while a probationer has a conditional liberty, this liberty is neither as broad nor as free from limitations as that of persons who have not committed a crime. The expectations of privacy of a person on probation cannot be the same as the expectations of privacy of persons not on pro-

---

[7] Section 48.34, Stats., provides in part:

**Disposition of child adjudged delinquent**. If the judge adjudges a child delinquent, he or she shall enter an order deciding one or more of the dispositions of the case as provided in this section under a care and treatment plan.

bation. It is only the reasonable expectations of privacy which the fourth amendment protects. Conditions of probation must at times limit the constitutional freedoms of the probationer. Necessary infringements on these freedoms are permissible as long as they are not overly broad and are reasonably related to the person's rehabilitation.

*Tarrell*, 74 Wis. 2d at 654, 247 N.W.2d at 701 (footnote omitted). In our previous discussion of whether the trial court acted within its discretion, we explained how the blood test was related to James' rehabilitation. James has failed to convince this court that *Tarrell* supports his position that the condition of probation violates his Fourth Amendment rights.

James also argues that *State v. Kroening*, 274 Wis. 266, 79 N.W.2d 810, supports his position that the mandatory blood testing would be violative of his Fourth Amendment rights. In *Kroening*, the Wisconsin Supreme Court determined that an automobile driver's blood test results were erroneously admitted into evidence at his trial for negligent homicide resulting from an automobile accident. *Id.* The court held that the blood taken from the unconscious driver was the result of an illegal search and seizure, given that the police did not have probable cause to arrest the driver. *Id.* at 271-76, 79 N.W.2d at 814-17.

James' argument that the reasoning in *Kroening* is applicable to his case would have merit if he were an ordinary citizen who had not been arrested or adjudicated a delinquent. James, however, is a juvenile probationer, and as such, does not have the same expectations of privacy as does an ordinary citizen. *See Tarrell,* 74 Wis. 2d at 654, 247 N.W.2d at 701. We reject

James' argument that the blood test ordered as a condition of his probation is an illegal search under *Kroening*. In *Griffin v. Wisconsin*, 483 U.S. 868 (1987), the United States Supreme Court upheld a warrantless search of a probationer's home, premised on "reasonable grounds," as opposed to "probable cause," to believe that there was contraband in the home. The court reasoned that a probationer's status can constitute one of many "special needs" that justify departure from strict adherence to the Fourth Amendment's probable-cause and warrant requirements. *Id.*, 483 U.S. at 873-80. *Griffin*'s rationale applies here; the special needs in the context of this case articulated by the trial court fully support the condition of probation we uphold today. *See also Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989) ("[T]he permissibility of a particular practice 'is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.' " (citation omitted)).[8]

---

[8] Due to the undeveloped nature of James' argument, we decline to address the Fourth Amendment issue any further. We note however, from our own research, that courts in other jurisdictions, in the face of Fourth Amendment challenges, have upheld mandatory blood testing of prison inmates for the purposes of compiling a DNA data bank to be used to identify perpetrators of crimes, *see Jones v. Murray*, 962 F.2d 302, 305-08 (4th Cir.) (weighing minimal intrusion of blood test against "the government's interest in preserving a permanent identification record of convicted felons for resolving past and future crimes"), *cert. denied*, 121 L.Ed.2d 378 (1992), *State v. Olivas*, No. 59436-8, 1993 Wash. LEXIS 156, at *15-39 (Wash. August 12, 1993) (applying "special needs" analysis), and mandatory drug testing, *via* urinalysis, as a condition of probation imposed for a non-drug offense, *United States v. Williams*, 787 F.2d 1182, 1185-86 (7th Cir. 1986).

James also argues that requiring him to undergo a blood test is "fundamentally unfair," and thus, is a violation of due process. Aside from citing to authority that indicates that the "applicable due process standard in juvenile proceedings . . . is fundamental fairness," *see McKeiver v. Pennsylvania*, 403 U.S. 528, 543 (1971), James does nothing to develop the constitutional due process argument. We have cautioned parties in the past that we will decline to address undeveloped arguments. *See State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633, 642 (Ct. App. 1992). Where the parties have failed to properly define the issues, develop the arguments, and explore the possible paths of constitutional analysis, we decline to do so on their behalf.

Because we have rejected James' argument that the trial court misused its discretion in ordering the blood test as a condition of probation, and because James was unsuccessful in his constitutional challenge, we affirm the order of the circuit court. The stay granted by this court on September 29, 1992, is dissolved.

*By the Court.*—Order affirmed.

FINE, J. (*concurring*). I concur in the result and much of the majority opinion. I disagree, however, with the majority's discussion on pages 683–685 relating to the trial court's authority to impose forfeitures or various work and living arrangements on juveniles under section 48.34, Stats. In my view, these dispositional options *are* related to offenses that underlie a finding of delinquency and reflect the legislature's recognition that certain life-style controls may be necessary to

accomplish the dual aim of The Children's Code: protection of the public and rehabilitation of the juvenile delinquent, *see* sec. 48.01(1)(c), Stats. These alternatives are as much related to an underlying offense as is transfer to a secure facility, *see* sec. 48.34(4m), Stats., or placement on probation, *see* sec. 48.34(2), Stats. The issue here is thus not whether the blood-test condition is related to the underlying offense but, rather, whether, as a probationer, the juvenile may complain about the infringement on his Fourth Amendment interest.[1] For the reasons expressed in the main body of the text on page 687 of the majority opinion, I conclude that he may not.[2]

---

[1] A compelled blood test is "a Fourth Amendment search." *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 616-617 (1989).

[2] I specifically join in the following from the majority opinion:

> In *Griffin v. Wisconsin*, 483 U.S. 868 (1987), the United States Supreme Court upheld a warrantless search of a probationer's home, premised on "reasonable grounds," as opposed to "probable cause," to believe that there was contraband in the home. The court reasoned that a probationer's status can constitute one of many "special needs" that justify departure from strict adherence to the Fourth Amendment's probable-cause and warrant requirements. *Id.*, 483 U.S. at 873-80. *Griffin*'s rationale applies here; the special needs in the context of this case articulated by the trial court fully support the condition of probation we uphold today. *See also Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989) ("[T]he permissibility of a particular practice 'is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.' ") (citation omitted).