2001 WY 54

**In the Matter of the Interest of WJH:**

**WJH, Appellant (Defendant),**

v.

**The State of Wyoming, Appellee (Plaintiff).**

**No. C–00–9.**

Supreme Court of Wyoming.

June 14, 2001.

Sylvia Lee Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Marion Yoder, Senior Assistant Public Defender, for Appellant.

Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Georgia L. Tibbetts, Senior Assistant Attorney General, for Appellee.

Before LEHMAN, C.J., and GOLDEN, HILL, and KITE, JJ.

KITE, Justice.

[¶ 1] Appellant WJH admitted several allegations of juvenile delinquent behavior. The juvenile court ordered an indefinite term of probation with specific terms and conditions to be met including 360 hours of community service in lieu of financial restitution. WJH appealed contending the juvenile court did not have statutory authority to order an indefinite term of probation, the damages assessed were excessive and not supported by the evidence, and the community service was unreasonable, constituted indentured servitude, and violated the child labor laws. We affirm the Order Adjudicating Child Delinquent and Requiring Predispositional Study and reverse the Dispositional Order. We remand with direction to the juvenile court to (1) assign a sanction level as set out in Wyo. Stat. Ann. §§ 14–6–248 through 14–6–252 (LEXIS 1999) or (2) enter written reasons in the record to explain both its decision to deviate from the guidelines, through its omission of assignment of a sanction level as set out in §§ 14–6–248 through 14–6–252, and its imposition of sanctions dif-

ferent from any provided at any sanction level and (3) conduct such further proceedings as are appropriate and consistent with this decision.

## ISSUES

[¶ 2]   WJH framed the issues on appeal as follows:

ISSUE I

Were the adjudication and disposition orders legally correct?

ISSUE II

Were the terms of disposition reasonable under the circumstances?

ISSUE III

Does the record support the extent of sanctions imposed?

Appellee State of Wyoming posited a single issue:

Did the juvenile court abuse its discretion in imposing the sanctions it did for Appellant's delinquent acts?

## FACTS

[¶ 3]   A delinquency petition was filed in Juvenile Court for the Fourth Judicial District, which alleged WJH, a minor, engaged in four delinquent acts generally described as follows: (1) In September of 1999, WJH and another boy, in violation of Wyo. Stat. Ann. § 6–3–201(a) and (b)(i) (LEXIS 1999),[1] damaged a fire extinguisher owned by City Electric, discharging and depleting its contents which required the extinguisher to be serviced; (2) during the same time frame, in violation of Wyo. Stat. Ann. § 6–3–302 (LEXIS 1999),[2] WJH entered the Hubbard Mill building without authority and (3) in violation of § 6–3–201(a) and (b)(i) vandalized the

building and contents by damaging pallets of bagged feed, pouring liquid around the interior of the building, and writing graffiti on the walls; and lastly (4) in May of 1999, in violation of Wyo. Stat. Ann. § 6–3–201(a) and (b)(iii) (LEXIS 1999),[3] WJH vandalized a bulldozer by pouring dirt or sand into the radiator, fuel tank, and crankcase causing $3,575.90 in damages.[4]   At the initial hearing, WJH admitted (1) he had discharged the fire extinguisher, (2) had entered the Hubbard Mill building without permission and (3) opened feed sacks spilling seed on the floor of the building, and (4) had engaged in a dirt clod war with another boy in the vicinity of the bulldozer resulting in WJH putting a stick in the smokestack to denote he had "captured" the machine and this act might have caused dirt to go into the smokestack.[5] Upon these admissions, the juvenile court indicated it was satisfied WJH had voluntarily admitted the delinquent acts.

[¶ 4]   The juvenile court appointed a public defender to represent WJH and a court appointed special advocate (CASA) guardian ad litem who was to file a CASA investigation report with the court.   The court also ordered the Department of Family Services (DFS) to file a predisposition report.   The CASA and DFS reports indicated WJH had no prior violations of the law, his parents were divorced, and he was in the primary care of his father.   They further reflected WJH had moved a number of times over the past several years, he currently resided with his father at a local motel, and the animosity between his parents had resulted in a number of law enforcement interventions.   Despite the difficult family dynamics, the re-

---

1.   Violation of § 6–3–201(a) and (b)(i), commonly referred to as property destruction, constitutes a misdemeanor punishable upon conviction of an adult by imprisonment of not more than six months, a fine of not more than $750, or both.

2.   Violation of § 6–3–302, commonly referred to as criminal entry, constitutes a misdemeanor punishable upon conviction of an adult by imprisonment of not more than six months, a fine of not more than $750, or both.

3.   Violation of § 6–3–201(a) and (b)(iii) constitutes a felony punishable upon conviction of an

adult by imprisonment of not more than ten years, a fine of not more than $10,000, or both.

4.   WJH was born July 29, 1988, and therefore was ten years old at the time of the delinquent act alleged to have occurred in May of 1999 and was eleven years old at the time of the delinquent acts alleged to have occurred in September of 1999.

5.   In admitting the allegations, WJH stated all incidents involved another juvenile boy.

ports also noted WJH was doing well in school both academically and behaviorally.

[¶ 5] At the disposition hearing, WJH's public defender objected to the amount of alleged damages as reflected in the DFS report. Specific objection was made regarding the alleged damages to Thar's Feed [6] in the amount of $4,721.91. The prosecutor brought Exhibit A to the court's attention, a document purportedly itemizing $3,575.90 of damage to the bulldozer attributable to WJH's delinquent acts. WJH's attorney also objected to these damages as being excessive due to WJH's qualified admission and the $2,000 liability limitation of Wyo. Stat. Ann. § 14–2–203 (LEXIS 1999).[7] Exhibit A was not admitted and, beyond the discussion reported in the disposition hearing transcript, was not made part of the record on appeal. WJH's public defender recommended the court require WJH to perform community service in lieu of financial restitution because he did not have the means to make payment. Upon the court's inquiry, the prosecutor stated the DFS worker had advised him she could arrange community service. No testimony or evidence was introduced at the disposition hearing to establish the amount of damages. The only damage/restitution information developed at the disposition proceeding was the result of unsworn discussions on the record between the attorneys and the judge. The judge stated he was convinced that WJH's behavior had "cost people in excess of $2,000 in damages."

[¶ 6] As reflected in the Dispositional Order, the juvenile court placed WJH on probation with the DFS for an indefinite period of time under specific terms and conditions. In this appeal, WJH takes issue with the indefinite period of the probation and the 360 hours of community service which was ordered to be completed in a reasonable time frame with the monthly amount determined by the DFS. During the disposition hearing, the court made remarks indicating the 360 hours of community service were derived, to an extent, by dividing the $2,000 damage amount by the $5.50 minimum wage figure. The Dispositional Order reflected that, due to WJH's age, no monetary restitution was imposed and instead he was required to complete 360 hours of community service. WJH appeals the alleged errors and deficiencies of the Order Adjudicating Child Delinquent and Requiring Predispositional Study and the Dispositional Order.

## STANDARD OF REVIEW

[¶ 7] We discern the primary issue of this appeal is whether, in the disposition of an admitted juvenile delinquency petition, the juvenile court is statutorily limited to impose only the specific sanctions set out in Wyo. Stat. Ann. §§ 14–6–245 through 14–6–252 (LEXIS 1999). This is a question of statutory interpretation, and the answer must be found in the language of these provisions.

Determining the lawmakers' intent is our primary focus when we interpret statutes. Initially, we make an inquiry respecting the ordinary and obvious meaning of the words employed according to their arrangement and connection. We construe together all parts of the statutes *in pari materia*, giving effect to each word, clause, and sentence so that no part will be inoperative or superfluous. We will not con-

---

6. Thar's Feed apparently was the operator or responsible party for the Hubbard Mill, although the record is unclear on this fact.

7.

§ 14–2–203. Parental tort liability for property damage of certain minors; exception; action cumulative

(a) Any property owner is entitled to recover damages from the parents of any minor under the age of seventeen (17) years and over the age of ten (10) years who maliciously and willfully damages or destroys his property. The recovery is limited to the actual damages in an amount not to exceed two thousand dollars ($2,000.00) in addition to taxable court costs. This section does not apply to parents whose parental custody and control of the child had been terminated by court order prior to the destructive act.

(b) The action authorized in subsection (a) of this section is in addition to all other actions which the owner is entitled to maintain and nothing in this section precludes recovery in a greater amount from the minor, parents or any person for damages for which the minor or other person would otherwise be liable. The purpose of this section is to authorize recovery from parents in situations where they would not otherwise be liable.

strue statutes in a manner which renders any portion meaningless or produces absurd results.

*McAdams v. State,* 907 P.2d 1302, 1304 (Wyo. 1995) (citations omitted); *see also GN v. State (In re C.N.),* 816 P.2d 1282, 1283 (Wyo. 1991).

[¶ 8] Pursuant to Wyo. Stat. Ann. § 14–6–229(d) (LEXIS 1999), if a "child is found to be delinquent the court may impose any sanction authorized by W.S. 14–6–245 through 14–6–252." "The dispositional phase of juvenile proceedings requires broad judicial discretion to accommodate the unique rehabilitative needs of juveniles." *ALJ v. State,* 836 P.2d 307, 311 (Wyo.1992); *see also A.M.R. v. State,* 741 N.E.2d 727, 729 (Ind.Ct. App.2000); *In the Matter of C.C.,* 13 S.W.3d 854, 859 (Tex.App.2000); *People v. V.O.,* 287 Ill.App.3d 1055, 223 Ill.Dec. 468, 679 N.E.2d 1241, 1243 (1997); *State v. James P.,* 180 Wis.2d 677, 510 N.W.2d 730, 732 (Ct.App. 1993); *San Diego County Department of Social Services v. Sherry A. (In re Corey A.),* 227 Cal.App.3d 339, 277 Cal.Rptr. 782, 786 (1991).

## DISCUSSION

[¶ 9] The juvenile justice system, from its genesis, has had an ideological foundation of concern for the welfare of children with an emphasis on specialized, noncriminal treatment of youths. Craig J. Herkal, *You Live, You Learn: A Comment on Oklahoma's Youthful Offender Act,* 34 Tulsa L.J. 599, 602 (1999). In this system, the state through the juvenile court judge and welfare workers becomes in essence the de facto parents of juveniles, under the legal rationale of *parens patriae.*[8] *Id.* Children are not assumed to have the capacity to care for themselves and are assumed to be subject to the control of their parents. If parental control falters, the

state must step in as *parens patriae.*[9] *Id.; see also Thompson v. Oklahoma,* 487 U.S. 815, 825, 108 S.Ct. 2687, 2693, 101 L.Ed.2d 702, 712 (1988). The system developed informal proceedings, dispensing with many technicalities and formalities, to facilitate the understanding of juveniles and also invested the court with broad discretion regarding disposition. Herkal, *supra,* at 603; Candace Zierdt, *The Little Engine That Arrived at the Wrong Station: How to Get Juvenile Justice Back on the Right Track,* 33 U.S.F. L.Rev. 401, 409 (1999); *see also ALJ v. State,* 836 P.2d 307, 311 (Wyo.1992).

[¶ 10] These theoretical underpinnings are reflected in Wyoming case law:

By enacting a juvenile code separate from the criminal code, Wyoming's legislature has recognized that juveniles and adults are not similarly situated. Juvenile proceedings are designed to rehabilitate and protect the juvenile, not to punish him. These goals of rehabilitation and protection are reflected throughout the juvenile code. Proceedings in juvenile court are equitable as opposed to being criminal. Juveniles are not convicted; they are merely adjudicated delinquents. By treating juveniles more gently than it treats adults, the legislature is compensating for juveniles' inherent lack of experience and maturity.

*ALJ,* 836 P.2d at 313. "Juvenile delinquency proceedings are not criminal prosecutions, but are special proceedings that serve as an ameliorative alternate to the criminal prosecution of children." *Interest of W.L.F.,* Nos. 0–760, 00–0939, 2001 WL 103522, at *1 (Iowa Ct.App. Feb.7, 2001). In general terms, special proceedings are those which were not actions in law or suits in equity under common law and which may be commenced by motion or petition upon notice for the pur-

---

8. *"Parens patriae,"* literally "parent of the country," refers traditionally to the role of the state as sovereign and guardian of persons under legal disability, such as juveniles or the insane. It is the principle that the state must care for those who cannot care for themselves, such as minors who lack proper care and custody from their parents. Black's Law Dictionary 1137 (7th ed.1999).

9. Wyoming's initial juvenile justice legislation was the Juvenile Court Act of 1951 (repealed by the 1971 Act), which provided its purpose was to secure for each child coming before the court such care, guidance, supervision, and control as necessary to serve the best interests of the child and the public and to develop him into a responsible citizen. Kennard F. Nelson, Comments, *The Wyoming Juvenile Court Act of 1971,* VIII Land & Water L.Rev. 237, 239, 269 (1973).

pose of obtaining relief of a special or distinct type. *State in Interest of C.*, 638 P.2d 165, 168 (Wyo.1981). They result from a right conferred by law together with authorization of a special application to the courts to enforce the right. *Id.* This court has recognized that, even in cases involving delinquency, proceedings under the Juvenile Court Act could be in lieu of proceedings under the general criminal procedure. *Id.*

[¶ 11] With this background, we now address WJH's argument that strict construction of § 14–6–229(d)[10] allows only those sanctions found within the four corners of §§ 14–6–245 through 14–6–252 to be imposed in a juvenile delinquency disposition. It is further contended, as the juvenile court failed to assign a specific sanction level as provided in §§ 14–6–248 through 14–6–252, the only sanctions available to the court were those common to all sanction levels as set out in § 14–6–247(a). WJH concedes there is no requirement a sanction level be imposed but asserts, in absence of such an assignment, the juvenile court is constrained to the sanctions detailed in § 14–6–247(a). For reasons to be discussed more fully below, we disagree as such an interpretation is inconsistent with the language of the statutes and the philosophy of juvenile justice and serves only to hamstring the judicial system to the detriment of the very juveniles it is endeavoring to steward.

[¶ 12] The progressive sanctions guidelines became effective July 1, 1998. 1997 Wyo. Sess. Laws ch. 119, § 4. Prior to that time, the sanctions set out in the statutes were in substance the provisions of § 14–6–247, entitled "Sanctions common to all levels." *See* Wyo. Stat. § 14–109 (Michie 1957); Wyo. Stat. Ann. § 14–6–229 (Michie 1994); Wyo. Stat. Ann. § 14–6–229 (Michie 1997). The new law provides a purposes provision as follows:

### § 14–6–245. Progressive sanction guidelines

(a) The purpose of the progressive sanctions guidelines authorized by W.S. 14–6–245 through 14–6–252 are to:

(i) Ensure that juvenile offenders face uniform and consistent consequences and punishments that correspond to the seriousness of each offender's current offense, prior delinquent history, special treatment or training needs and effectiveness of prior interventions;

(ii) Balance public protection and rehabilitation while holding juvenile offenders accountable;

(iii) Permit flexibility in the decisions made in relation to the juvenile offender to the extent allowed by law;

(iv) Consider the juvenile offender's circumstances; and

(v) Improve juvenile justice planning and resource allocation by ensuring uniform and consistent reporting of disposition decisions at all levels.

Section 14–6–245. This provision makes it clear the legislature intended to provide uniformity and consistency of punishments for juvenile offenders across the state while maintaining the flexibility of the juvenile courts to deal effectively with individual offenders. The question raised is whether this legislation makes application of the "guidelines" and imposition of sanction levels or sanctions delineated in §§ 14–6–246 through 14–6–252 mandatory. We conclude it does not.

[¶ 13] There is no mandatory requirement that any one of the five sanction levels be imposed. The statutes provide in pertinent part, "when a child is adjudicated as a delinquent the juvenile court *may*, in a disposition hearing, assign the child one (1) of the following sanction levels." Section 14–6–246(a) (emphasis added). There is likewise no mandatory language that limits the courts to the sanctions in § 14–6–247 entitled "Sanctions common to all levels." The permissive and discretionary term "may" is used a number of times in the provisions of § 14–6–246, entitled "Sanction levels," and § 14–6–247, entitled "Sanctions common to all levels."

[¶ 14] "We have, in a number of instances, noted that the term 'may' connotes per-

---

10. "If the child is found to be delinquent the court may impose any sanction authorized by W.S. 14–6–245 through 14–6–252." Section 14–6–229(d).

missive authority and does not structure a mandatory requirement." *Rawson v. State,* 900 P.2d 1136, 1138 (Wyo.1995). All the "may" references pertain to the court's discretion to apply or not to apply specific sanction levels or specific sanctions. This explicit discretion is mirrored in the progressive sanction purpose language of § 14–6–245(a)(iii) to "[p]ermit flexibility in the decisions made in relation to the juvenile offender to the extent allowed by law." It is also evident in the *parens patriae* provision of § 14–6–247(a)(x), which gives the court the authority to do all things with regard to a child that his parents might reasonably or lawfully do.

[¶ 15] The catchall provision of § 14–6–246(d), which WJH failed to brief, most pointedly addresses the broad extent of the juvenile court's discretion.

> (d) If the juvenile court deviates from the guidelines under this section it shall state in writing its reasons for the deviation and enter the statement into the record. ***Nothing in W.S. 14–6–245 through 14–6–252 prohibits the imposition of appropriate sanctions that are different from those provided at any sanction level.***

Section 14–6–246(d) (emphasis added). The language "Nothing in W.S. 14–6–245 through 14–6–252 prohibits the imposition of appropriate sanctions that are different from those provided at any sanction level" is, by its plain terms, a catchall provision. The Ohio court has construed a similar provision within its juvenile code which vests the courts with wide discretion to "[m]ake *any* further disposition that the court finds proper." *In re Lyons,* No. CA98–11–024, 1999 WL 988819, at *2 (Ohio Ct.App. Nov. 1, 1999) (citing *In re Caldwell,* 76 Ohio St.3d 156, 666 N.E.2d 1367 (1996)). The Ohio court determined its general assembly, by adding the word "any," gave the judge discretion to further implement the rehabilitative disposition of a juvenile. *Id.* It further concluded this latitude was provided because of the judge's unique ability to see and hear the delinquent child, to assess the consequences of the child's delinquent behavior, and to evaluate all the circumstances involved. *Id.* The Ohio court

held the catchall provision empowered the juvenile court with broad discretion to tailor its dispositional order to the specific needs of a particular juvenile in a specific set of circumstances. *Id.*

[¶ 16] This reasoning is persuasive and applicable to Wyoming's catchall provision. The language indisputably provides the juvenile court with the ability to impose any sanctions it deems appropriate. It permits the court to customize dispositional orders to the unique characteristics of individual children, in light of both their personal circumstances and the nature of their delinquent behavior. The provision is not amenable to any other reasonable interpretation, and to impose another interpretation would render the statute language meaningless. Such an interpretation is consistent with the meaning and intent of the other juvenile sanction provisions. Furthermore, it is consistent with the purposes statute, § 14–6–245, that encourages, but does not mandate, use of the progressive sanction guidelines to effect consistent sentences for similarly situated juvenile offenders while maintaining the juvenile court's flexibility. We decline to interpret the plain language of these provisions to limit the sentencing discretion of juvenile courts. If that was the legislature's clear intent, it would have utilized mandatory, not permissive, language. We construe together all parts of the statutes *in pari materia,* and, in ascertaining the meaning of a given law, we consider and construe in harmony all statutes relating to the same subject or having the same general purpose. *Fosler v. Collins,* 13 P.3d 686, 688 (Wyo.2000).

[¶ 17] The sole qualification to the juvenile court's broad sanction authority is, in the event of deviation from the guidelines (§§ 14–6–245 through 14–6–252), the court must state its reasons in writing and enter the statement into the record. Section 14–6–246(d). We hold that the juvenile court's decision, which omitted the assignment of a sanction level as set out in §§ 14–6–248 through 14–6–252, does deviate from the guidelines and therefore written reasons were required to be entered into the record.

[¶ 18]   The requirement for a written explanation to be made part of the record is eminently reasonable.   It ensures the juvenile court has carefully considered the relevant circumstances, has set forth its rationale, and has provided a basis for appellate review.

> [I]t is important that the exercise of discretion be accompanied by the trial court's articulation of the factors considered and the weight accorded to them .... [A]rticulation of the reasons for the decision tends to provide a firm base for an appellate judgment that discretion was soundly exercised.   It confines review of the exercise of discretion to its appropriate scope—*i.e.,* whether the relevant factors were considered and given appropriate weight ....

*United States v. Criden,* 648 F.2d 814, 819 (3d Cir.1981).   A thorough list of such relevant factors is found in *State ex rel. K.O.,* 327 N.J.Super. 555, 744 A.2d 233, 239 (Ct.App. Div.2000), as follows:

> (1) The nature and circumstances of the offense;
>
> (2) The degree of injury to persons or damage to property caused by the juvenile's offense;
>
> (3) The juvenile's age, previous record, prior social service received and out-of-home placement history;
>
> (4) Whether the disposition supports family strength, responsibility and unity and the well-being and physical safety of the juvenile;
>
> (5) Whether the disposition provides for reasonable participation by the child's parent, guardian, or custodian, provided, however, that the failure of a parent or parents to cooperate in the disposition shall not be weighed against the juvenile in arriving at an appropriate disposition;
>
> (6) Whether the disposition recognizes and treats unique physical, psychological and social characteristics and needs of the child;
>
> (7) Whether the disposition contributes to the developmental needs of the child, including the academic and social needs of the child where the child has mental retardation or learning disabilities;  and

> (8) Any other circumstances related to the offense and the juvenile's social history as deemed appropriate by the court.

A written explanation which reviewed and weighed factors such as these would be sufficient to meet the requirements of § 14–6–246(d).

[¶ 19]   The question, which must now be resolved, is whether a deviation from the *sanctions* available in §§ 14–6–245 through 14–6–252 requires a written explanation to be made part of the record.   We conclude it does.   At the risk of being redundant, we note § 14–6–246(d) (emphasis added) states, "If the juvenile court **deviates from the guidelines** ... it shall state in writing its reasons for the deviation."   The guidelines are actually combinations of sanctions that increase in severity through the stages from level one to level five.   The next sentence of § 14–6–246(d) provides, "Nothing in W.S. 14–6–245 through 14–6–252 prohibits the imposition of appropriate sanctions that are different from those provided at any sanction level."   This language conveys the juvenile court's broad discretion to tailor sanctions as it determines appropriate to the specific juvenile case at hand.   Logically, because a deviation from the statutorily established combinations of sanctions, set out as guidelines, requires written explanation, it follows that sanctions imposed which are different from any provided at any sanction level would also constitute a deviation and require written explanation.   It also seems apparent that an adequate explanation of deviation from the guidelines would necessarily entail clarification of sanctions imposed that are different from any provided at any sanction level.

[¶ 20]   Pursuant to this analysis, we conclude the Dispositional Order must be reversed and remanded.   We do so with direction to the juvenile court to (1) assign a sanction level as set out in §§ 14–6–248 through 14–6–252 or (2) enter written reasons in the record to explain both its decision to deviate from the guidelines, through its omission of assignment of a sanction level as set out in §§ 14–6–248 through 14–6–252, and its imposition of sanctions different from any provided at any sanction level and (3)

conduct such further proceedings as are appropriate and consistent with this decision.

[¶ 21] WJH asserts the indefinite period of probation and 360 hours of community service in lieu of restitution were beyond the court's authority and constitute an abuse of discretion. Because we have concluded the Dispositional Order must be reversed and remanded with direction, we decline to address these issues at this time.

[¶ 22] WJH also asserts the Order Adjudicating Child Delinquent and Requiring Predispositional Study inappropriately referenced WJH admitting the "charges" as opposed to admitting the "allegations." This contention is correct, and the defect was remedied in the Dispositional Order. As we are reversing and remanding the Dispositional Order, we presume any subsequent order of the juvenile court will also be drafted in such a way as to rectify what is essentially a typographical error. Issue is also taken with a provision of the Order Adjudicating Child Delinquent and Requiring Predispositional Study which stated an admission constituted a waiver of the right to appeal. The purported error is obviously moot as this appeal has gone forward and, pursuant to our reversal and remand, should be rectified in any further order issued by the juvenile court.

[¶ 23] Finally, WJH asserts the juvenile court failed, as required by § 14–6–247(c), to advise him of progressive sanctions that might be imposed. This argument is without merit. The provision requires, "For a child at any sanction level, the juvenile court shall inform the child of the progressive sanctions that may be imposed on the child if the child continues to engage in delinquent conduct." Section 14–6–247(c). Although the court must advise the child of the potential for progressively more serious sanctions, it is not required to read the sanction statutes to the juvenile verbatim to satisfy the requirement. The transcript of the dispositional hearing reflects the court did advise the child, "You cannot have any violations of law during this probation, [WJH]. If you get involved with setting any fires or trespassing—trespassing on property, things like that, you can be brought back into court for a more serious disposition." It is evident

the court was speaking to this eleven-year-old child in terms he would understand. We hold this explanation was sufficient to comply with § 14–6–247(c) and to give the child fair notice that any further delinquent acts would result in more serious sanctions being imposed.

[¶ 24] The Order Adjudicating Child Delinquent and Requiring Predispositional Study is affirmed, and the Dispositional Order is reversed. The case is remanded with direction to the juvenile court to (1) assign a sanction level as set out in §§ 14–6–248 through 14–6–252 or (2) enter written reasons in the record to explain both its decision to deviate from the guidelines, through its omission of assignment of a sanction level as set out in §§ 14–6–248 through 14–6–252, and its imposition of sanctions different from any provided at any sanction level and (3) conduct such further proceedings as are appropriate and consistent with this decision.

GOLDEN, J., filed a dissenting opinion.

GOLDEN, Justice, dissenting.

[¶ 25] While I agree that the Dispositional Order should be reversed and remanded, I do so for reasons different than the majority. The Order Adjudicating Child Delinquent and Requiring Predispositional Study also should be reversed. Accordingly, I must dissent from the majority opinion.

[¶ 26] This case is an excellent example of how a relatively simple case can become an extremely important case in terms of judicial process and statutory interpretation and the tension between the legislative and judicial departments and their respective powers. With regard to the Dispositional Order, WJH questions the authority and the discretion of the juvenile court to impose certain sanctions. The majority opinion concludes that the juvenile court has full authority to impose any sanction on any juvenile adjudicated delinquent. Essentially, the majority opinion construes isolated language of the Juvenile Justice Act in such a manner that the Act becomes advisory only and is not binding upon the juvenile court. I cannot agree with this construction of the Juvenile Justice Act. The legislature specifically adopted a pro-

gressive sanction structure, and the structure must be adhered to if the juvenile court is to impose sanctions.

[¶ 27]   This Court has traditionally used a process for interpreting specific language within a statute that requires specific language to be read in the context of the statute as a whole.  By placing specific language in the context of the statute as a whole, it is more likely that the interpretation will accurately reflect the legislative intent:

> [T]he statute reader may fruitfully draw on the entirety of the statute, studying the whole rather than the solitary part (or parts) put before the court by the specific case at hand.  Answers may emerge from a study of the whole that might not be suggested by a narrowly focused parsing of a solitary provision in a complex statute.

Kenneth W. Starr, *Of Forests and Trees: Structuralism in the Interpretation of Statutes*, 56 Geo. Wash. L.Rev. 703, 708 (1988).  This Court has stated that, in interpreting statutory language, the Court reviews the entire statutory scheme "in order to see the forest and not just the trees."  *Mondt v. Cheyenne Police Dept.*, 924 P.2d 70, 76 (Wyo. 1996).

[¶ 28]   The forest in this case is the Juvenile Justice Act, and particularly the progressive sanction structure of the Juvenile Justice Act. The progressive sanction structure is set out in Wyo. Stat. Ann. § 14–6–245 through § 252 (Lexis 1999).   In section 245(a)(i), the legislature stated one purpose for progressive sanctions is to "ensure that juvenile offenders face uniform and consistent consequences and punishments that correspond to the seriousness of each offender's current offense."   To this end, the legislature developed sanction levels defined by the nature of the juvenile's conduct.   Once a sanction level is imposed, sanctions are expressly delineated that may be imposed for each sanction level.  The juvenile court maintains the flexibility to choose any sanction level and apply sanctions from the numerous sanctions delineated in the statute.  Viewing sections 245 through 252 as a whole, it is clear that the intent of the legislature is to promote dispositional uniformity through the imposition of sanction levels based upon the specific conduct of the juvenile and then the imposition of appropriate, defined sanctions.

[¶ 29]   The majority opinion ignores this context.  The basic flaw of the majority opinion is that it chooses to focus on single trees in the forest.   The majority opinion focuses on isolated, specific language contained in Wyo. Stat. Ann. § 14–6–246.   Specifically, the construction arrived at by the majority relies upon an individual word, "may," in subsection 246(a) and one particular sentence in subsection 246(d).   The majority then interprets this one word and this one sentence without regard even to the language of section 246 as a whole, let alone within the context of the progressive sanction structure developed by the legislature.   By taking the statutory language at issue out of context, the majority opinion renders the progressive sanction structure meaningless.   It is difficult to imagine that the legislature enacted the progressive sanction structure as a recommendation only.   Interpreting the language in context, it is possible to give effect to all the language employed by the legislature.

[¶ 30]   The Juvenile Justice Act must be read as a whole in order to effectively interpret the progressive sanction structure.   The Act itself must be read in the context of the juvenile court system in general.   Juvenile courts are courts of limited jurisdiction.   Article 5, section 29 of the Wyoming Constitution delegates authority to the legislature to provide for juvenile delinquency courts that "shall have such jurisdiction as the legislature may by law provide."   Thus, juvenile courts are the creation of the legislature and have powers only as expressly conferred by the legislature.  *See In Re C.N.*, 816 P.2d 1282, 1284 (Wyo.1991) (limiting jurisdictional authority of the juvenile court to authority expressly authorized in statute;  general provision cannot override specific provision to expand authority);  *In Re Maricopa County, Juvenile Action No. J–74275*, 117 Ariz. 317, 572 P.2d 451, 452 (Ct.App.1977) ("the power of a juvenile court to make a particular disposition of a delinquent child is limited in that it must be expressly granted by legislative act").  Therefore, the dispositional terms im-

posed upon WJH must be expressly authorized under the Juvenile Justice Act.

[¶ 31] Turning to the Juvenile Justice Act, Wyo. Stat. Ann. § 14–6–229 authorizes the specific terms of disposition available to a juvenile court and therefore is key to the overall analysis. Section 229 is entitled "Decree where child adjudicated delinquent; dispositions; terms and conditions; legal custody." Subsection 229(d) authorizes the juvenile court to impose sanctions. Specifically, subsection 229(d) states: "If a child is found to be delinquent the court may impose any sanction authorized by W.S. § 14–6–245 through § 14–6–252." No other provision in section 229 authorizes any other sanctions for disposition. The juvenile court therefore is limited to imposing only those sanctions authorized in subsection 229(d).

[¶ 32] Because the majority opinion places so much emphasis on the term "may" as found in subsection 246(a), it is instructive to analyze the term "may" as used in subsection 229(d). The majority correctly characterizes "may" as a permissive word, but this does not answer the question of what authority is granted by a sentence that includes the term "may." Subsection 229(d) authorizes the juvenile court to impose the sanctions as found in sections 245 through 252. The term "may" does not modify the sanctions available for disposition, it modifies the verb "impose." By utilizing "may" before the verb "impose," the legislature made it clear that the juvenile court is not required to impose any sanction on a juvenile adjudicated delinquent. This allows the juvenile court to maintain flexibility to make individually tailored dispositions. The sanctions available for disposition, however, are not affected by the use of the term "may." The sanctions available for disposition are only those sanctions as found in sections 245 through 252. Any other interpretation would stretch the definition of the term "may" beyond its ordinary and obvious usage and meaning.

[¶ 33] If a juvenile court is to impose sanctions, then, pursuant to section 229, the juvenile court is only authorized to impose those sanctions as found in sections 245 through 252. Moving to sections 245

through 252, we find the statutory structure for progressive sanctions. Sections 245 and 246 provide the purposes and certain terms and conditions applicable to the sanctions. Sections 247 through 252 delineate specific sanctions. It is important to note that section 229 refers the juvenile court not just to those sections delineating sanctions, but rather to all the sections defining the progressive sanction structure.

[¶ 34] Looking more closely at the progressive sanction structure established by the legislature, the statutory scheme begins with section 245. Section 245 contains the legislative purposes for the progressive sanction guidelines.[1] The statutory language of sections 246 through 252 must be interpreted to affect these purposes. The purposes include not only allowing the juvenile court flexibility but also ensuring uniformity and consistency in disposition based upon a juvenile's conduct. Generally, it is noteworthy that the legislature does not state within the purposes that the progressive sanction structure is a recommendation only and need not be followed by the juvenile court.

[¶ 35] Section 246 is the section receiving the focus of the majority opinion. Section 246 is entitled "Sanction levels" and its content is true to its title. Section 246 defines how a juvenile court should choose a sanction level based upon a juvenile's conduct. Subsection 246(a) states in pertinent part that the juvenile court "may, in a disposition hearing, assign the child one (1) of the following sanction levels." The use of the term "may" in this subsection is identical to the use of the same term in subsection 229(d). The juvenile court is not required to assign a sanction level just as the juvenile court is not required to impose a sanction on juveniles adjudicated delinquent.

[¶ 36] The majority opinion of the Court correctly construes this "may" as making the assignment of a sanction level permissive. The majority opinion then jumps to the erroneous assumption that the alternative option for the juvenile court is to impose sanctions without determining a sanction level. This construction not only does not comport with

---

1. The full language of Wyo. Stat. Ann. § 14–6– 245 is quoted in ¶ 12 of the majority opinion.

the ordinary and obvious usage and meaning of the term "may" as discussed above, but it also cannot stand when analyzed in light of the statutory language read as a whole.

[¶ 37] Many provisions within the Juvenile Justice Act become meaningless if no sanction level is imposed. Going back to the purposes of the progressive sanctions in § 14–6–245, the purposes include promoting uniform and consistent consequences for delinquent behavior throughout the state and to "[i]mprove juvenile justice planning and resource allocation by ensuring uniform and consistent reporting of disposition decisions at all levels." These purposes cannot be achieved if juvenile courts are free to ignore the sanction levels.

[¶ 38] Further, because, pursuant to section 229, available sanctions are limited to those expressly authorized in sections 245 through 252, the juvenile court would have no sanctions available if no sanction level is imposed. The specific sanctions expressly authorized are found in sections 247 through 252. Section 247 lists "Sanctions common to all levels." The section starts with "[f]or a child at any sanction level, the juvenile court may ..." and then sets forth certain sanctions. By its express terms the sanctions only apply to a child "at any sanction level." Sections 248 through 252 define the sanctions directly applicable to each sanction level. All these delineated sanctions are inapplicable if no sanction level is imposed. The statutory scheme is thus crystal clear that, if the juvenile court is going to impose sanctions, it must first impose a sanction level.[2]

[¶ 39] Once a sanction level is imposed, the juvenile court can impose appropriate sanctions. The legislature delineated authorized sanctions in sections 247 through 252. The majority opinion of this Court holds that the juvenile court may impose any sanction whether or not expressly authorized by the legislature in sections 247 through 252 be-

cause of language found in Wyo. Stat. Ann. § 14–6–246(d).[3] Subsection 246(d) states: "If the juvenile court deviates from the guidelines under this section it shall state in writing its reasons for the deviation and enter the statement into the record. Nothing in Wyo. Stat. Ann. § 14–6–245 through § 14–6–252 prohibits the imposition of appropriate sanctions that are different from those provided at any sanction level." In the majority opinion of the Court, the second sentence has been termed a "catchall" and interpreted as allowing the juvenile court to impose any imaginable sanction.

[¶ 40] Subsection 246(d) allows the juvenile court flexibility, but not the flexibility contended by the majority opinion. The majority opinion creates uncertainty regarding the use of the term "sanction."[4] The majority opinion reads extra language into the statute and interprets "appropriate sanction" to mean "any imaginable appropriate sanction." This Court may not read into a statute authority that the legislature did not expressly grant.

> The omission of words from a statute must be considered intentional on the part of the legislature. Words may not be supplied in a statute where the statute is intelligible without the addition of the alleged omission. Words may not be inserted in a statutory provision under the guise of interpretation. The Supreme Court will not read into laws what is not there. This court will not supply omissions in a statute and redress is with the legislature. We are alerted by all this to the result that it is just as important to recognize what a statute does not say as it is to recognize what it does say.

*In Re Voss*, 550 P.2d 481, 485 (Wyo.1976) (citations omitted). Available sanctions are expressly defined by the legislature in sections 247 through 252. The term "sanction" in section 246(d) should be limited to refer-

---

2. While I fully agree with the majority opinion that, pursuant to § 246(d), a deviation from the sanction level guidelines mandates a written explanation on the record from the juvenile court, I cannot agree that omitting the assignment of a sanction level is a deviation. Failure to assign a sanction level is a complete abrogation of the guidelines, not a deviation.

3. This holding is especially curious because even the State, in its brief, concedes that the juvenile court is limited to those sanctions expressly delineated in sections 247 through 252.

4. The term "sanction" is not defined in the Juvenile Justice Act.

ence only those sanctions expressly defined by the legislature.

[¶ 41] This interpretation becomes imperative when interpreting the language within its context. Section 246 defines sanction levels—specifically how to choose the appropriate sanction level. The location of this section within the statutory scheme is important. The supposed "catchall" provision does not exist in any section that defines available sanctions or other available terms of disposition. If the Wyoming legislature had intended to include a dispositional "catchall," one would expect to find it in section 229 where the specific terms of disposition are defined.[5] A narrower sanction "catchall" logically could be in § 14–6–247 "Sanctions common to all levels." Neither section contains any "catchall" language.

[¶ 42] The Wyoming legislature did not include express broad authority for the juvenile court to impose any imaginable sanction in the section authorizing available orders of disposition or in any of the sections authorizing specific sanctions available upon disposition of a juvenile adjudicated delinquent. Therefore we must infer reasonably that the Wyoming legislature did not intend the juvenile court to have such power. Certainly it is not the province of this Court to judicially create such broad authority where the legislature has not done so by express language.

[¶ 43] Subsection 246(d) allows the juvenile court the flexibility to impose any combination of the expressly delineated sanctions at any sanction level. It does not expand the authority of the juvenile court to impose any sanction other than those specifically delineated in sections 247 through 252.

[¶ 44] In sum, the Juvenile Justice Act requires that, if the juvenile court is going to impose sanctions, it must choose a sanction level. The "may" references in the statute logically only give the juvenile court the option to not impose sanctions. Once a sanction level is chosen, the sanction options available to the juvenile court include any combination of those sanctions expressly defined by the legislature in sections 247 through 252. This interpretation is supported both by the express language of the applicable statutory sections and the statutory scheme as a whole.

[¶ 45] The disposition imposed upon WJH does not comply with the mandates of the Juvenile Justice Act. WJH was not assigned a sanction level. Because no sanction level was imposed, no sanctions were available to the juvenile court to impose. Thus, in imposing sanctions, the juvenile court exceeded its authority. The Dispositional Order is thus void.

[¶ 46] Turning now to the Order Adjudicating Child Delinquent and Requiring Predispositional Study, WJH admitted to certain delinquent acts and an adjudication of WJH as a delinquent child is appropriate. The problem with the Order, however, is that the Order simply states that WJH "is found and adjudicated to be a delinquent child." Since sanction levels and sanctions are to be based upon the specific conduct of the juvenile that led to his adjudication, this broad language does not allow the juvenile court to properly impose any sanction.

[¶ 47] Should the juvenile court refer to its findings of fact, the findings are just as vague. The findings state "[t]he child ... admitted the allegations contained in the Petition filed herein." Certainly, as pointed out in the facts set forth in the majority opinion, WJH did not admit to all the allegations contained in the Petition. There is no indication in the Order as to exactly what WJH admitted nor what delinquent acts the juvenile court found WJH to have committed based upon his admissions. The Order is thus facially insufficient and should be reversed on that ground.[6]

[¶ 48] While I could end the discussion here, the Dispositional Order presents anoth-

---

5. The Ohio statute referred to in the majority opinion authorizing the juvenile court to "[m]ake any further disposition that the court finds proper" is found in the Ohio section authorizing available terms of disposition, Ohio's equivalent to Wyoming's section 229. The context and the express language of the Ohio statute make it an obvious catchall. It is not analogous to the language in Wyo. Stat. Ann. § 14–6–246(d).

6. I also agree with the majority opinion that the Order contains other language that is at best misleading and must be corrected.

er troubling issue. Although this issue is not briefed or argued, this Court has authority on its own to raise and decide issues involving fundamental rights. As this Court explained on another occasion:

> We are not a bit concerned that the matter ... was not raised in the lower court or argued by either of the parties. This court has general superintending control over all the courts of the state and the Wyoming judicial system in general. It is our duty to protect its integrity and prohibit dealing lightly with its proceedings. We are at liberty to decide a case upon any point which in our opinion the ends of justice require, particularly on a point so fundamental that we must take cognizance of it.

*Allen v. Allen*, 550 P.2d 1137, 1142 (Wyo. 1976) (footnotes omitted); *see also In re HC,* 983 P.2d 1205, 1209, (Wyo.1999) ("[n]either party addresses this issue; however, this Court may review issues directly involving an appellant's fundamental rights"); *Chicago & N.W. Ry. Co. v. City of Riverton,* 70 Wyo. 84, 127, 247 P.2d 660, 663 (Wyo.1952) ("were we to limit our decisions strictly and literally to the arguments advanced by counsel in a case, the law in this jurisdiction would be in a sorry state" (Blume, C. J.)).

[¶ 49] The issue of concern is the appointment and use of the multidisciplinary team (MDT). The Dispositional Order, for the first time, appoints a MDT.[7] The language of the Order gives the MDT the mandate of preparing "recommendations for the Court's consideration in making an informed disposition of this case." Obviously such mandate is moot when given in the Dispositional Order. The language regarding the juvenile court making an informed disposition, however, is very appropriate. The entire statutory scheme is premised upon the juvenile court making an informed disposition, which the juvenile court cannot accomplish if it fails to appoint the MDT until after disposition.

7. Pursuant to the language of the order, the MDT was appointed pursuant to Wyo. Stat. Ann. § 14-6-427 which is part of the Children in Need of Supervision Act, not the Juvenile Justice Act.

8. In fact, in order to avoid any potential delays that might be occasioned by the work of both the DFS and a MDT in gathering information and

[¶ 50] Under the Juvenile Justice Act, the juvenile court is required to appoint a MDT pursuant to Wyo. Stat. Ann. § 14-6-227 entitled "Predisposition studies and reports." Wyo. Stat. Ann. § 14-6-227(b) states "[a]fter a petition is filed alleging a child is delinquent, the court shall appoint a multidisciplinary team." This requirement is mandatory on the juvenile court. In this case, the question concerns the timing of the appointment. Although the section does not expressly specify a time, it is clear under the statute that the multidisciplinary team must be appointed before disposition.

[¶ 51] Returning to our original premise of statutory interpretation, a statute must be construed in context. Reading § 14-6-227 in context, there is no uncertainty regarding when the juvenile court must appoint the MDT. The topic of section 227, as suggested by its heading, is predisposition reports. Subsection (a) requires the juvenile court to order the Department of Family Services (DFS) to prepare a predisposition study and report. Subsection (b) requires the juvenile court to appoint a MDT. Subsection (e) provides a mandate for the MDT—the MDT "shall review the child's personal and family history, school, mental health and department of family services records and any other pertinent information, for the purpose of making sanction recommendations." The only logical interpretation of the statutory language, read as a whole, is that the MDT must be appointed in time for the MDT to prepare sanction recommendations for the juvenile court to use in determining a disposition.[8]

[¶ 52] This interpretation is supported by Wyo. Stat. Ann. § 14-6-229(a) (Lexis 1999), which states in pertinent part:

> In determining the disposition to be made under this act in regard to any child:

formulating predispositional recommendations, best practices would indicate that both the DFS and a MDT should be judicially appointed and authorized to proceed with their work when a petition alleging a juvenile delinquent is filed, or at least as soon thereafter as is practical.

(i) The court shall place on the record the predisposition report and the recommendations, if any, of the multidisciplinary team;

(ii) If the court does not place the child in accordance with the recommendations of the predisposition report or multidisciplinary team, the court shall enter on the record specific findings of fact relied upon to support its decision to deviate from the recommended disposition.

It might be argued that the "if any" language regarding recommendations from the MDT in Wyo. Stat. Ann. § 14–6–229(a)(i) negates the requirement for the juvenile court to appoint a MDT. This construction contradicts the language of Wyo. Stat. Ann. § 14–6–227 requiring the appointment of the MDT and establishing the statutory duty of the MDT to gather information "for the purpose of making sanction recommendations."

[¶ 53] The more statutorily consistent interpretation is that the MDT is not required to propose any sanction recommendations, solely at the MDT's discretion. The juvenile court is required, however, to appoint the MDT and place whatever recommendations the MDT may formulate on the record prior to disposition. Appointing the MDT after disposition has occurred, or as part of the disposition, does not comply with the mandates of the statute.

[¶ 54] Practically, the appointment of the MDT after disposition creates serious jurisdictional and due process issues. In this case, the juvenile court, as part of its order of disposition, appointed a MDT. The juvenile court then ordered the juvenile and his parents to cooperate with and comply with the members of the MDT. Because the MDT is not given an appropriate express mandate in the dispositional order, I am left to guess at the authority of the MDT. Presumably the MDT is to develop actions for the juvenile and his parents to follow. Should WJH or his parents not abide by the dictates of the MDT, the parents could be held in contempt of court and WJH could have his probation revoked and receive a harsher disposition for violating the terms of his probation.

[¶ 55] The juvenile court exceeded its jurisdiction in granting such authority to the MDT. It is the responsibility of the juvenile court to order the terms of disposition. The authority of the MDT is defined clearly by statute. Nowhere in Wyo. Stat. Ann. § 14–6–227 does it state or even imply that the MDT may formulate recommendations that will become immediately effective upon the juvenile and his parents. The MDT recommendations are to be submitted to the juvenile court. The juvenile court determines the ultimate terms of disposition. The juvenile court cannot abdicate this responsibility to the MDT post-disposition.

[¶ 56] The entire dispositional phase of the underlying juvenile case is troubling. While juvenile courts certainly have flexibility, they still must exercise such flexibility within the confines of their statutorily defined jurisdiction. While juvenile courts have a great deal of flexibility in order to fulfill their objectives of serving as *parens patriae*, "the admonition to function in a 'parental' relationship is not an invitation to procedural arbitrariness." *Kent v. United States*, 383 U.S. 541, 554, 86 S.Ct. 1045, 1054, 16 L.Ed.2d 84 (1966).

[¶ 57] The Juvenile Justice Act provides a dispositional process that promotes collaboration among multiple professionals to help determine the individual needs and requirements of juveniles coming before the juvenile court. Disposition is supposed to be based upon the predisposition report of the DFS and recommendations from the MDT plus any additional information submitted at the dispositional hearing. The juvenile court thus is aided in determining an appropriate disposition by information from a variety of professionals, including counselors and educators, as well as from people who know the child such as relatives and friends.

[¶ 58] The requirement that the juvenile court put in the record any reasons for deviating from the recommendations of the MDT and the DFS predisposition report confirms that the legislature truly wants dispositional decisions to be made on the basis of a team effort. This case does not reveal such a professional collaboration during the dispositional phase of the proceedings. This is especially troubling given the juvenile court's

**1162**

failure to impose a sanction level or clearly state the reasons for the terms of disposition.

[¶ 59] In reading the Juvenile Justice Act, it is clear that the purposes of many provisions of the Act are to ensure a uniform dispositional process and a disposition for juveniles that at least follows certain guidelines. Neither has been achieved in this case. The will of the legislature, a coordinate branch of government, should not be so obviously ignored.

[¶ 60] I would hold that both the letter and the spirit of the Juvenile Justice Act have been violated in this case in regard to both the specific disposition and the process used in achieving the disposition. The juvenile court did not look to the progressive sanction structure of the Juvenile Justice Act in reaching its disposition. Sanctions were imposed without first imposing a sanction level. The disposition was not reached as the result of a team effort of professionals investigating WJH's specific circumstances. The resulting disposition of WJH is exceptionally harsh given his admitted (not alleged and unproven) conduct.[9]

[¶ 61] The case should be reversed and remanded for a new disposition. The specific acts of delinquency to which WJH admitted should be defined so that the sanction level guidelines can be applied. The juvenile court, after receiving and considering dispositional recommendations from a MDT, should then impose a sanction level and appropriate sanctions as expressly defined by the legislature in Wyo. Stat. Ann. § 14–6–245 through § 252, should sanctions still be appropriate.

---

9. While not reaching the abuse of discretion arguments posed by WJH, the sanctions imposed do not seem to meet the legislative purpose of imposing the most serious sanctions for the most serious conduct.