2002 WY 38

**Sonjia SERDA, Appellant (Petitioner),**

v.

**STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent).**

No. 01–29.

Supreme Court of Wyoming.

March 14, 2002.

George Santini of Ross, Ross & Santini, LLC, Cheyenne, WY, Representing Appellant. Argument by Mr. Santini.

Gay Woodhouse, Attorney General; John W. Renneisen, Deputy Attorney General; Gerald L. Laska, Senior Assistant Attorney General; and David L. Delicath, Assistant Attorney General, Representing Appellee. Argument by Mr. Delicath.

Before LEHMAN, C.J., and GOLDEN, HILL, KITE, and VOIGT, JJ.

HILL, Justice.

[¶ 1] Appellant, Sonjia Serda (Serda), challenges the October 16, 2000 order of the Medical Commission (Commission), which denied a portion of her attorney's claim for costs and expenses necessarily and reasonably incurred in preparation for her hearing before the Commission. Appellee, Wyoming Workers' Safety and Compensation Division (Division), contends that the Commission properly denied Serda's claim in accordance with its rules, as well as governing statutes. On November 1, 2000, Serda filed a petition for review in district court pursuant to W.R.A.P. 12.03. On December 12, 2000, the district court certified the matter to this Court for review under authority granted by W.R.A.P. 12.09.

[¶ 2] We affirm.

## ISSUES

[¶ 3] Serda raises these issues:

1. Did the Medical Commission act arbitrarily and capriciously in failing to follow its own rules of practice and procedure in denying Appellant's claim for reimbursement of medical fees expended during the preparation of her claim for contested case hearing?

2. Did the Medical Commission err as a matter of law in its interpretation of §§ 27–14–405(g) and (m) and 27–14–604, W.S.1977 (1998 Repl.) in denying payment for the costs of a third physical impairment rating performed at Appellant's request during the pendency of [the] contested case proceedings?

The Division rephrases those issues somewhat:

I. Did the Medical Commission correctly follow its own rules in declining to order the Division to pay for Appellant's third impairment rating?

II. Did the Medical Commission comply with Wyo. Stat. Ann. § 27–14–405(g) & (m) in declining to order the Division to pay for Appellant's third impairment rating?

## FACTS

[¶ 4] Serda's claim for worker's compensation benefits began in August of 1996, when she injured her right elbow while at work in Cheyenne. She received worker's compensation benefits for that injury and, after a substantial period of conservative treatment, underwent surgery on January 27, 1998. Serda continued therapy for many months after the surgery and was deemed by her treating physician to have reached maximum medical improvement on May 21, 1998. Serda continued to experience significant pain and continued treatment for that problem.

[¶ 5] Wyo. Stat. Ann. § 27–14–405(f) (LexisNexis 2001) provides: "An injured employee suffering an ascertainable loss may

apply for a permanent partial impairment award as provided in this section." Section 27–14–405(g) provides: "An injured employee's impairment shall be rated by a licensed physician using the most recent edition of the American Medical Association's guide to the evaluation of permanent impairment." The record does not reflect that Serda made an application for a permanent partial impairment award; however, on July 24, 1998, the Division sent Serda to Gem City Bone & Joint for the purpose of undergoing an impairment evaluation. The report of that evaluation is detailed, but it suffices for purposes of this appeal to note that the report was sent to the Division and set Serda's impairment rating at 0%. Sections 27–14–405(f) and (g) are not specific as to how the selection of the physician whose examination will initiate this process is made, but the Division's rules flesh this out. Chapter 5, section 3(c)(ii) provides:

(c) *Initial Claim for Permanent Partial Impairment (PPI) Benefits.*

. . . .

(ii) *Applications for PPI Award.* If the treating physician determines that the injury has resulted in a permanent impairment according to the *American Medical Association's Guide to the Evaluation of Permanent Impairment* or its successor, the treating physician shall notify the Division in writing. The Division shall file the written documentation of permanent impairment, copying all parties. Based upon the rating given by the treating physician, the worker may apply with the Division for the appropriate award, pursuant to W.S. §§ 27–14–405 or 406.

3 Weil's Code of Wyoming Rules, Department of Employment, *Workers' Compensation Rules, Regulations and Fee Schedule,* Chapter 5, Section 3. *Claims for Benefits,* 025 220 001–13 (2001). Serda's treating physician was B.F. Magsamen, M.D., of Fort Collins, Colorado, and no determination was made by him, nor did he submit written documentation of an impairment rating. The record does not reflect that Serda made any objection to this procedure, either at this point in the proceedings, or later when she was actually represented by counsel. Wyo. Stat. Ann. § 27–14–405(m) (LexisNexis 2001) provides:

(m) If the percentage of physical impairment is disputed, the division shall obtain a second opinion and if the ratings conflict, shall determine the physical impairment award upon consideration of the initial and second opinion. Any objection to a final determination pursuant to this subsection shall be referred to the medical commission for hearing by a medical hearing panel acting as hearing examiner pursuant to W.S. 27–14–616.

[¶ 6] When Serda received notice of the 0% rating, she objected. It is clear that Wyo. Stat. Ann. § 27–14–405(m) authorizes the Division to obtain a second opinion so as to counter that evaluation brought forward by the worker's treating physician, which may serve to obviate the need for an IME in many circumstances. The record does not explain the reason for the lengthy delay, but on March 26, 1999, the Division sent Serda to Rehabilitation Associates of Colorado for a second impairment rating. That report is somewhat more detailed than the first and set Serda's impairment rating as follows: "In my experience, a 5% extremity impairment would be appropriate. If desired, utilizing table 30, this can be converted to a 3% whole person impairment." The report was addressed to the Division and Concentra Managed Care. Thus, contrary to the governing statutes and pertinent rules of the Division, both impairment ratings were obtained by physicians engaged by the Division for purposes of defense against the claim, which it initiated for Serda. On July 22, 1999, the Division sent Serda a document captioned: "FINAL DETERMINATION OF PERMANENT PARTIAL IMPAIRMENT BENEFITS." That document informed Serda that, "The Division has reviewed this rating along with the original rating of 0% and has determined that you are entitled to a 3% percent [*sic*] impairment." Serda sent a letter to the Division, under the date of July 27, 1999, which we quote in pertinent part:

I object to the Final Determination of Permanent Partial Impairment Benefits of 3% because I do not think it reflects my com-

plete impairment. I request the opportunity to seek legal advice at no personal expense and to present my objections before the Medical Commission, with a date for hearing to be as soon as possible, considering of course all interested parties' schedules.

The record then demonstrates that: Serda's request was referred to the Medical Commission by the Case Analyst on September 28, 1999; was further referred to the Medical Commission by the Case Analyst acting as the District Manager on December 27, 1999; was further referred by the Program Manager on December 27, 1999; and was actually referred to the Administrator of the Medical Commission on December 27, 1999. On December 28, 1999, the Commission then received the above-described documentation. Both the Division and the Commission are located in Cheyenne. By order dated December 29, 1999, a pre-hearing conference was set by the Commission for January 26, 2000. By order dated January 26, 2000, the Commission appointed an attorney to represent Serda and rescheduled the pre-hearing conference for February 8, 2000. In a document dated February 8, 2000, and entitled, "Order Setting Review Conference," the Commission reported the following:

THIS MATTER having come before the Office of the Medical Commission, (hereinafter referred to as "the Commission"), pursuant to **the request for an IME [independent medical examination] and said request having been made by counsel for the Employee/Claimant [Serda], George Santini, and George having further request [*sic* ] that we would like to have J.C. DeMers stipulate to an IME and said request having been made during the 2nd Pre Hearing Conference, and counsel for the Objector /Defendant [Division] having not been available for said conference, and the Medical Commission [*sic* ] having fully reviewed the case file;**

IT IS HEREBY ORDERED that this matter shall be set for a review conference on the *28th day of February at 10:00 a.m.* At said review conference the parties will advise the Hearing Examiner of the status of the above matter;

IT IS FURTHER ORDERED that the parties may engage in further discovery herein until fifteen (15) days prior to the hearing date, yet to be set.

(Emphasis added.)

[¶ 7] By order dated March 21, 2000, which purports to be a report of the proceedings at the February 28, 2000 review conference, the hearing was set for June 29, 2000. No mention is made of Serda's request for an IME, though it seems unmistakably clear that such a request was made.[1]

[¶ 8] With respect to an IME, the governing statute, Wyo. Stat. Ann. § 27–14–604 (LexisNexis 2001), provides:

(a) In any contested proceeding, the hearing examiner may appoint a duly qualified impartial health care provider to examine the employee and give testimony. The fee for the service shall be as ordered by the hearing examiner, with mileage allowance as is allowed to other witnesses to be assessed as costs and paid as other witness fees are paid. The employer or employee may, at his own expense, also designate a qualified health care provider who may be present at the examination of the employee and give testimony at later hearings.

(b) If the employer and employee stipulate to an examination of the employee by a nonresident, qualified health care provider designated by the hearing examiner, and that the report of the health care provider as to his examination shall be admitted in evidence, the hearing examiner may order payment of the reasonable cost and expense of the employee's attendance upon the health care provider, the provider's fee for examination of the employee and his report thereon. The fees and costs

---

1. There is nothing in the governing statute or pertinent rules to suggest that a "formal motion" is required to obtain an IME, though that would be better practice. Here, the record is clear that the Commission was asked to exercise its statutory prerogatives in this regard. It is equally clear that the record contains no indication that the request was approved or disapproved by the Commission.

shall be charged in the same manner as other costs and witness fees. The nonresident health care provider shall report in writing to the hearing examiner and include answers to questions asked by the hearing examiner relative to the employee's condition.

[¶ 9] It should be noted that the statute immediately above authorizes both an IME to be paid for by the Division, as well as an IME to be paid for by the employee or employer.

[¶ 10] The hearing was held on June 29, 2000, and by order dated August 10, 2000, the Commission established Serda's impairment rating at 3%. Serda did not appeal that decision.

[¶ 11] For the purpose of preparing for the contested case hearing before the Commission, Serda's attorney sent Serda to Victoria M. Vernon, M.D., in Cheyenne for an additional evaluation (IME). Dr. Vernon prepared a lengthy report, which she characterized as an IME. It suffices for purposes of this appeal to note that Dr. Vernon rated Serda's impairment at 8%.

[¶ 12] After the Commission issued its final decision setting Serda's impairment rating at 3%, Serda's attorney submitted an application for an award of attorney's fees, as well as for the costs and expenses associated with his representation. Included in that request was a $395.00 item representing the fee advanced by Serda's attorney, to Dr. Vernon, for the IME she performed. Wyo. Stat. Ann. § 27–14–602(d) (LexisNexis 2001)[2] provides that a claimant may be appointed an attorney in a contested case hearing:

(d) Upon request, the hearing examiner may appoint an attorney to represent the employee or claimants and may allow the appointed attorney a reasonable fee for his services at the conclusion of the proceeding. An appointed attorney shall be paid according to the order of the hearing examiner either from the worker's compensation account, from amounts awarded to the employee or claimants or from the employer. In any contested case where the issue is the compensability of an injury, a prevailing employer's attorney fees shall also be paid according to the order of the hearing examiner from the worker's compensation account, not to affect the employer's experience rating. An award of attorney's fees shall be for a reasonable number of hours and shall not exceed the benefits at issue in the contested case hearing. In all other cases if the employer or division prevails, the attorney's fees allowed an employee's attorney shall not affect the employer's experience rating. Attorney fees allowed shall be at an hourly rate established by the director of the office of administrative hearings and any application for attorney's fees shall be supported by a verified itemization of all services provided. No fee shall be awarded in any case in which the hearing examiner determines the claim or objection to be frivolous and without legal or factual justification.

[¶ 13] Of course, a hearing before the Commission is a contested case hearing.[3]

---

2. We include here Wyo. Stat. Ann. § 27–14–608 (LexisNexis 2001), which prohibits an attorney from receiving an additional fee from a claimant. We also note that the statute refers only to "fee" and does not specifically mention costs or expenses:

(a) If the hearing examiner under W.S. 27–14–602(d) or the district court or supreme court under W.S. 27–14–615 set a fee for any person for representing a claimant under this act excluding a health care provider, the person shall not receive any additional fee from the claimant.

(b) Any person violating this section is guilty of a misdemeanor and upon conviction shall be fined not more than seven hundred fifty dollars ($750.00), imprisonment in the county jail for a term not to exceed six (6) months, or both.

3. Wyo. Stat. Ann. § 27–14–616(b)(iv) (LexisNexis 2001) provides that one of the duties of the Commission is:

(iv) To furnish three (3) members of the commission to serve as a medical hearing panel to hear cases referred for hearing. The division shall refer medically contested cases to the commission for hearing by a medical hearing panel. The decision to refer a contested case to the office of administrative hearings or a medical hearing panel established under this section shall not be subject to further administrative review. Following referral by the division, the hearing examiner or medical hearing panel shall have jurisdiction to hear

With respect to attorney's fees and costs, the Commission's rules provide as follows:

(a) Upon request, the presiding officer or executive secretary may appoint an attorney to represent an employee under W.S. § 27–14–602(d) and allow a reasonable fee upon entry of a final order. All requests for attorney fees shall be in detail showing time spent and work performed and shall be verified. Fees allowed by the presiding officer shall be at an hourly rate of sixty dollars ($60.00) per hour. **Appointed attorneys shall be reimbursed for costs necessarily and reasonably incurred.** Except for good cause shown, attorneys' travel time in connection with the case or to the contested case hearing shall not be reimbursed.

(b) Requests for fees and expenses of appointed attorneys shall indicate the source of funds as provided by W.S. 27–14–602(c) from which the fees and expenses have been proposed to be ordered paid and such requests shall be properly served on all parties and their attorneys.

(c) No fee shall be awarded in any case in which the presiding officer determines the claim to be frivolous and without legal or factual justification.

3 Weil's Code of Wyoming Rules, Department of Employment, *Workers' Compensation Medical Commission, Rules of Practice and Procedure,* Chapter 6, Section 5. *Appointed Attorney,* 025 240 001–6 (1995) (emphasis added).

[¶ 14] The Division objected to the request for it to pay the $395.00 for Dr. Vernon's services:

> and decide all issues related to the written notice of objection filed pursuant to W.S. 27–14–601(k). Different medical hearing panels with different membership may be selected to hear different cases, but a panel may hear more than one (1) case. Individual medical hearing panels shall be selected by the executive secretary under the supervision and guidance of the chairman of the medical commission. At least one (1) member of each panel shall be a physician. One (1) member shall be designated by the executive secretary to serve as chairman of the panel. When hearing a

1. The Division does not contest the reasonableness of the charges of $395.00 apparently rendered [*sic*] for Dr. Vernon's services.

2. The Division made clear its intention to object to payment for an additional impairment rating early in the proceedings and did not sit silent in allowing the Employee Claimant [Serda] to incur this expense.

3. The Division has previously asserted and continues to assert that under W.S. § 27–14–405(g) and (m), it is clear that the legislature intended for the Division to pay for one permanent physical impairment rating and to provide a second rating only if requested by the Employee–Claimant. The Division fully met its financial obligation to the Employee–Claimant by providing two ratings by qualified licensed physicians. If the legislature intended that the Employee–Claimant be entitled to a third rating at Division expense, then it would have said so. Inclusion of one is exclusion of others. This statute is not intended to create a fishing expedition at Division expense. An employee is only entitled to two ratings at Division expense.

■ [¶ 15] Serda responded to that objection, disagreeing with the Division's contentions and pointing out that, as provided by the statute, both evaluations were performed by physicians selected by the Division, they disagreed with one another, that medical testimony was at the heart of the issue to be decided, and that "obtaining an opinion of a physician of her [Serda's] own choosing was reasonable in light of the issues to be addressed and the complexity of the claimant's underlying medical condition." Of course, as we noted above, the statute and governing rules contemplate that the employee will ob-

> medically contested case, the panel shall serve as the hearing examiner and shall have exclusive jurisdiction to make the final administrative determination of the validity and amount of compensation payable under this act. For cases referred to the medical commission as small claims hearings under W.S. 27–14–602(b), the medical hearing panel may consist of one (1) physician who shall serve as the hearing examiner and shall have exclusive jurisdiction to make the final administrative determination of the validity and amount of compensation payable under this act.

tain an impairment rating from the employee's treating physician and if the Division does not agree with that rating, then it will obtain another impairment rating from a physician of its choosing.[4]

[¶ 16] The Commission held a hearing to consider the Division's objection and Serda's response. In the course of that hearing, both Serda and the Division directed the Commission's attention to Wyo. Stat. Ann. § 27-14-401(f) (LexisNexis 2001), which provides:

> (f) Subject to subsection (h) of this section, an employer or the division may designate health care providers to provide nonemergency medical attention to his employees or to claimants under this act. Except as provided in subsection (h) of this section, the employee may for any reason, select any other health care provider. **If the employee selects a health care provider other than the one (1) selected by the employer or the division, the employer or division may require a second opinion from a health care provider of their choice. The second opinion may include an independent medical evaluation, a functional capacity exam or a review of the diagnosis, prognosis, treatment and fees of the employee's health care provider.** The independent medical evaluation, a functional capacity exam or the review by the employer's health care provider shall be paid for by the employer and the evaluation, a functional capacity exam or review by the division's health care provider shall be paid from the worker's compensation account.

(Emphasis added.)

[¶ 17] Serda's counsel indicated that the Division had not properly applied that provision to Serda's circumstance (and that counsel would, in the future,[5] urge his clients to avail themselves of that provision). The Division contended that it was not applicable under the circumstances of this case. Serda also pointed out that there had been a con-

siderable lapse of time between the first evaluation and the second and more than a year between the time of the second evaluation and that performed by Dr. Vernon just before the hearing. At the conclusion of the hearing, the Commission issued an order denying reimbursement for the disputed $395.00 cost of Dr. Vernon's IME. That order contained these findings:

1. **The primary issue before the Medical Commission in the above-entitled matter was the level of Permanent Physical Impairment that had been sustained by the Employee/Claimant** [Serda].

2. A Physical Impairment Rating had been provided by Michael Kaplan, M.D., of Gem City Bone and Joint, in July of 1998, that rendered a Physical Impairment Rating of 0%.

3. Ms. Serda, the Employee/Claimant, disagreed with the evaluation of Dr. Kaplan and requested a second opinion on the issue of Physical Impairment and was evaluated by Bruce Lockwood, M.D., of Ft. Collins, Colorado, in March of 1999. This Physical Impairment Rating determined that Ms. Serda had a 3% Impairment.

4. A third Physical Impairment Rating conducted by Victoria Vernon, M.D., of Cheyenne, Wyoming, in May of 2000, was conducted apparently at the request of the Employee/Claimant. **The Wyoming Workers' Safety and Compensation Division objected to the payment of costs associated with Dr. Vernon's Impairment Rating in the amount of $395.00, alleging that the Division had already paid for and provided two Physical Impairment Ratings and there is no authority or statutory provision that authorizes the payment of a third Physical Impairment Rating.**

5. The subject of Physical Impairment Ratings is discussed by W.S. § 27-14-405(g), (m) and specifically provides for a first and a second opinion Physical Impair-

---

4. Presumably, if the employee has been treated by a physician designated/approved by the Division, then the Division may be less likely to challenge the impairment rating. *See* Wyo. Stat. Ann. § 27–14–401(f) (LexisNexis 2001).

5. Serda was not represented by counsel at the time the Division directed her to the first two evaluations. Because there was not a contested case in existence, she was not entitled to the appointment of an attorney.

ment Rating to be provided by the Wyoming Workers' Safety and Compensation Division. The language of the statute does *not* provide for a *third* rating.

6. The Employee/Claimant did not seek an additional Physical Impairment Rating under the provisions of W.S. § 27–14–604, which states, in pertinent part:

(a) "In any contested proceeding, the [h]earing [e]xaminer may appoint a duly qualified impartial [h]ealth [c]are [p]rovider to examine the [e]mployee and give testimony...."

This procedure provides a method for an additional Physical Impairment Rating or Independent Examination, over and above what had previously been provided by the Wyoming Workers' Safety and Compensation Division.

7. The Employee/Claimant has failed to provide sufficient authority to convince the Hearing Examiner that costs for said Physical Impairment Rating should be reimbursed through the Wyoming Workers' Safety and Compensation fund, pursuant to the request for Attorney's Fees and Costs.

(Emphasis added.)

## STANDARD OF REVIEW

[¶ 18] In a case involving an issue virtually identical to the one facing us here, we articulated this standard:

Judicial review of an agency action is directed by W.S. 16–3–114, under which 16–3–114(a) allows any person aggrieved or adversely affected in fact by the actions or inactions of an agency to obtain judicial review by the district court. "This court is governed by the same rules of review as was the district court." *Atchison v. Career Service Council of State of Wyoming,* 664 P.2d 18, 20 (Wyo.), *cert. denied* 464 U.S. 982, 104 S.Ct. 424, 78 L.Ed.2d 359 (1983). *See also Banda v. State ex rel. Wyoming Workers' Compensation Div.,* 789 P.2d 124 (Wyo.1990). While this court typically remands an administrative decision back to the agency when that decision relies upon findings of fact, *Cook v. Zoning Bd. of Adjustment for the City of Laramie,* 776 P.2d 181 (Wyo.1989); *FMC v. Lane,* 773

P.2d 163 (Wyo.1989), remand is not mandatory when the question before the district court or this court is a question of law or a mixed question of fact and law. *Natrona County School Dist. No. 1 v. McKnight,* 764 P.2d 1039, 1049 (Wyo.1988). The rationale underlying remand when findings of fact by an agency are involved is our reliance on the expertise of an agency. "[W]e have indicated we defer to the *experience* and *expertise* of the agency in its weighing of the evidence and will disturb its decisions only where it is clearly contrary to the overwhelming weight of the evidence on record." *Southwest Wyoming Rehabilitation Center v. Employment Sec. Com'n of Wyoming,* 781 P.2d 918, 921 (Wyo.1989) (emphasis added) (*accord Cody Gas Co. v. Public Service Com'n of Wyoming,* 748 P.2d 1144, 1146 (Wyo.1988)).

In the case of a question of law, it is the courts and not the agencies which display the dominant expertise since courts, as a matter of course, deal with questions of law and legislative intent. If an agency determination is not in accordance with law, this court corrects the determination to assure accordance with law. *See Employment Sec. Com'n of Wyoming v. Western Gas Processors, Ltd.,* 786 P.2d 866 (Wyo.1990). Unreasonableness of a compensatory legal fee assessment is addressed by the court as a matter of law if the underlying facts are not in dispute. The scope of review of the standard that is used for calculating the attorney fee is plenary with the appellate court. *Bell v. United Princeton Properties, Inc.,* 884 F.2d 713 (3rd Cir.1989).

This court in *Hohnholt v. Basin Elec. Power Co-op,* 784 P.2d 233 (Wyo.1989) addressed the specific standard for review in worker's compensation cases within the new organizational structure provided by the hearing examiner provision of W.S. 27–14–602. The *Hohnholt* test is substantial evidence for support of the findings and conclusions when evidentiary issues exist.

"We examine the entire record to determine if there is substantial evidence to support an agency's findings. If the agency's decision is supported by sub-

stantial evidence, we cannot properly substitute our judgment for that of the agency, and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the conclusions of the agency. It is more than a scintilla of evidence." (citation omitted) *Trout v. Wyoming Oil & Gas Conservation Comm'n,* 721 P.2d 1047, 1050 (Wyo. 1986).

*Id.* at 234. The standard is similarly applied in the federal courts for the administrative agency appeal as one of substantial evidence for factual review. *Mangus v. Director, Office of Workers' Compensation Programs, U.S. Dept. of Labor,* 882 F.2d 1527 (10th Cir.1989). A plenary review of questions of law and substantial evidence for questions of fact are the general standard of review for worker's compensation attorney fee contest actions. *Matter of Death of Smithour,* 778 P.2d 302 (Colo.App.1989); *Weyerhaeuser Co. v. Fillmore,* 98 Or.App. 567, 779 P.2d 1102 (1989).

The standard to be applied for assessment of the reasonableness of attorney fees is a question of law; reasonableness within the legal standard may be discretionary or constitute a factual determination. *Weyerhaeuser,* [98 Or.App. 567] 779 P.2d 1102. An insufficient record to support the decision made may justify the dismissal of the appeal, *Johnson v. Statewide Collections, Inc.,* 778 P.2d 93 (Wyo. 1989), or may merit remand for further hearing by the administrative agency. In this case, the hearing examiner provided no factual or legal basis to justify the fee reduction.

*State ex rel. Wyoming Workers' Compensation Division v. Brown,* 805 P.2d 830, 833–34 (Wyo.1991).

## DISCUSSION

■ [¶ 19] As a preface to our discussion, we find the following material from our decision in *In re Pohl,* 980 P.2d 816, 818, 820–21 (Wyo.1999) particularly worthy of note:

Pohl suffered a work-related back injury on July 22, 1992, when she reached for a clipboard and experienced pain on the left side of her lower back. She reported the incident to her employer but continued working. On September 30, 1992, Pohl experienced an increase in her lower back pain, which included pain radiating into her left buttock. A few days later, Pohl went to an emergency room, where she was diagnosed with an acute lumbar strain and a herniated lumbar disc with radiculopathy (disease of the spinal nerve roots).

Pohl originally followed a non-surgical course of treatment, but she continued to suffer pain. Another examination in February of 1993 confirmed disc degeneration and inflammation between lumbar vertebrae 4 and 5. In June of 1993, Pohl underwent spinal fusion surgery. After this surgery and recuperation, Pohl accepted a 20 percent permanent partial impairment award.

Pohl moved to Oregon in 1995 and continued to receive therapy and treatment. In June of 1995, Pohl requested an impairment rating from her Oregon physician. Although the physician told Pohl that "Oregon physicians don't do [impairment] ratings," the physician supplied a rating. Without including any explanation of how the rating was calculated, Pohl's physician concluded that Pohl's whole body impairment rating had increased to 32 percent. Relying on the 32 percent rating, Pohl petitioned the Division for an award for an increase in permanent partial disability pursuant to Wyo. Stat. Ann. § 27–14–605(a) (Michie Rpl. June 1991) [footnote omitted]. The Division disputed the 32 percent rating and arranged for an independent medical evaluation (IME) with a second Oregon physician. After examination and testing, the IME examiner concluded that Pohl's impairment rating was 35 percent.

Before rendering a final determination, the Division employed a physician, Dr. Anne MacGuire, to conduct a review of Pohl's claim. After reviewing Pohl's history and both impairment ratings, Dr. MacGuire concluded that both impairment ratings were invalid under the AMA Guide to the Evaluation of Permanent Impairment, Fourth Edition (AMA Guide).

The Division denied Pohl's claim for an increase in her impairment rating, stating that the "Medical Adjudicator for the Division has reviewed the Impairment Rating and has indicated that you have no additional impairment, therefore, additional Permanent Partial Disability benefits will not be awarded." Pohl filed a timely request for a hearing, and the Division referred the case to the Workers' Compensation Medical Commission (Medical Commission).

. . . .

Pohl complains that the Division did not comply with the Worker's Compensation Act when it evaluated her claim for an increase in incapacity under Wyo. Stat. Ann. § 27–14–605(a) (Michie Rpl. June 1991). She contends that the Division acted contrary to Wyo. Stat. Ann. § 27–14–405(m) (Michie 1997) (formerly –405(e) (Rpl. June 1991)) when it employed a physician to perform a "paper review" of Pohl's conflicting impairment ratings and later relied on the physician's review in denying benefits. We reject these contentions.

> Section 27–14–405(m) provides
>
> If the percentage of physical impairment is disputed, the division shall obtain a second opinion and if the ratings conflict, shall determine the physical impairment award upon consideration of the initial and second opinion. Any objection to the final determination pursuant to this subsection shall be referred to the medical commission for hearing by a medical hearing panel acting as hearing examiner pursuant to W.S. 27–14–616.
>
> In Pohl's case, the Division disputed the percentage of physical impairment and arranged for an IME. After the IME was completed, the Division employed a case review physician, Dr. MacGuire, to assist in "determin[ing] the physical impairment award upon consideration of the initial and second opinion." Clearly, the Division was within its authority in engaging a medical professional, Dr. MacGuire, to assist in evaluating the case before it. See Wyo. Stat. Ann. § 27–14–801(d) (Michie Rpl. June 1991). Moreover, when Pohl's Ore-

gon physician indicated in a report that "Oregon physicians don't do ratings," closer consideration of the ratings from both Oregon physicians was warranted. After reviewing the impairment ratings, Dr. MacGuire concluded that both ratings were invalid due to inaccurate applications of the AMA Guide.

> In her brief, Pohl concedes that it is appropriate for the Division to reject evidence which is invalid or erroneous. Nevertheless, she maintains that the Division erred by disregarding the ratings from the Oregon physicians. We disagree. With the accuracy of the impairment ratings challenged, the Division properly denied Pohl's claim and left its resolution to the expertise of the Medical Commission. We conclude that the Division's [sic] acted in accordance with Wyo. Stat. Ann. § 27–14–405(m) when it employed Dr. MacGuire to evaluate Pohl's impairment ratings.

[¶ 20] The *Pohl* case tends to suggest that the Division may obtain an IME at its expense when it deems it necessary; whereas, the worker may not have any right to counter such an IME except at the worker's own expense. The case of *Sweets v. State of Wyoming, ex rel. Wyoming Workers' Safety and Compensation Division*, 42 P.3d 461 (Wyo.2002) contains another similar example where the Division obtained two IME's prior to a hearing.

## CONCLUSION

[¶ 21] We agree with the Division's contention that Wyo. Stat. Ann. § 27–14–405(m) **authorizes** two impairment ratings. We find it unnecessary under the circumstances of this case to definitively answer the Division's contention that that same statute, ergo, **prohibits** a third (or subsequent) evaluation.

[¶ 22] Although Serda sought approval from the Commission to obtain an IME, that request was not approved prior to Serda having incurred the expense of the IME. Approval of that expenditure either before the hearing or after the hearing was within the authority of the Commission. However, we are unable to conclude that denying Ser-

da reimbursement for that expense was arbitrary, capricious, an abuse of discretion, or contrary to applicable law, and the Commission's order is affirmed.

GOLDEN, Justice, filed a specially concurring opinion, in which VOIGT, Justice, joined.

GOLDEN, J., concurring, in which VOIGT, J. joins.

[¶ 23] While I concur in the result, I write separately because I differ with the majority opinion regarding the statutes at issue and their application. I also disagree with the factual context applied by the majority opinion. An independent medical examination as contemplated under § 27–14–604 never occurred in this case, thus making § 604 inapplicable to these facts.

[¶ 24] The Division argues that § 27–14–405 limits the responsibility of the Division under these circumstances to two physical examinations, leading the majority opinion to discuss several sections of Article 4 of the Wyoming Worker's Compensation Act. The Division is confusing the applicable statutes. Section 405 only applies to the initial determination of an impairment rating. The circumstances at issue in this case arise within the context of a contested case hearing. Section 405 simply has no application to proceedings in a contested case.

[¶ 25] Specifically, this appeal concerns the payment for a physician's services that were rendered as part of a contested case hearing. Article 6 of the Wyoming Worker's Compensation Act governs the procedures for a contested case hearing. In determining who should bear the specific expense at issue in this appeal, two separate statutory sections are pertinent. The first section is § 27–14–602(d) and accompanying rule.[1] This section provides generally for the appointment of an attorney and provides for the payment of the fees of an appointed attorney under certain circumstances. The accompanying rule allows for the payment of certain costs as well.

[¶ 26] The second statutory section pertinent to this appeal is § 27–14–604 that reads:

§ 27–14–604. Examination by impartial health care provider; costs; report by nonresident provider.

(a) In any contested proceeding, the hearing examiner may appoint a duly qualified impartial health care provider to examine the employee and give testimony. The fee for the service shall be as ordered by the hearing examiner, with mileage allowance as is allowed to other witnesses to be assessed as costs and paid as other witness fees are paid. The employer or employee may, at his own expense, also designate a qualified health care provider who may be present at the examination of the employee and give testimony at later hearings.

(b) If the employer and employee stipulate to an examination of the employee by a nonresident, qualified health care provider designated by the hearing examiner, and that the report of the health care provider as to his examination shall be admitted in evidence, the hearing examiner may order payment of the reasonable cost and expense of the employee's attendance upon the health care provider, the provider's fee for examination of the employee and his report thereon. The fees and costs shall be charged in the same manner as other costs and witness fees. The nonresident health care provider shall report in writing to the hearing examiner and include answers to questions asked by the hearing examiner relative to the employee's condition.

Wyo. Stat. Ann. § 27–14–604 (LexisNexis 2001).

[¶ 27] Section 604 governs the procedure for an independent medical examination. It very specifically provides for the mechanism by which an independent medical examination for purposes of the contested case hearing can be obtained and how such examination should be conducted. The procedure is under the control of the hearing officer. It is the hearing officer who appoints "an impartial health care provider." The section states

---

**1.** See paragraphs twelve and thirteen of the majority opinion for the text of the statute and the rule.

that the expenses for the examination are to be as ordered by the hearing examiner and "paid as other witness fees are paid." Most importantly for the instant appeal, it states that, should the parties want a physician of their personal choosing present at the independent medical examination, they may do so at their own expense.

[¶ 28] It seems Serda was aware of this provision. It is mentioned in the "Order Setting Review Conference," set out in the majority opinion, that Serda, through her attorney, wanted to reach an agreement with the attorney for the Division for an IME, presumably pursuant to § 604. This comment in the Order only reflects discussions between the parties. The record does not reflect that any request or motion for an IME was ever made or ruled on by the hearing examiner. Instead, Serda consulted a physician of her own choosing and underwent a private physical examination.

[¶ 29] The order of the commission under review states that the medical examination at issue "was conducted apparently at the request of the Employee/Claimant" and that "[t]he Employee/Claimant did not seek an additional Impairment Rating under the provisions of W.S. § 27–14–604." There is nothing in the record to dispute these findings. In fact, in her "Response to Objection to Application for Award of Attorney Fees and Payment of Expenses," Serda, through her attorney, admitted that the medical examination was done at her request by "a physician of her own choosing." Thus, the examination was a private examination that in no way complied with the IME procedure contemplated by § 604.[2]

[¶ 30] The factual issue before the court, then, involves the responsibility for payment of a private medical examination. The problem with allowing payment for a private medical examination under the guise of costs is that the statutes reflect a scheme whereby a party requesting a private medical examination should be responsible for the payment therefor. The only time the hearing officer is specifically provided with authority to di-

rect payment of a medical examination is if the examination is an independent examination under § 604. In order to determine legislative intent, statutes must be read in pari materia, *In re WJH*, 2001 WY 54, ¶ 16, 24 P.3d 1147, ¶ 16 (Wyo.2001) ("in ascertaining the meaning of a given law, we consider and construe in harmony all statutes relating to the same subject or having the same general purpose"), and specific statutes control over general statutes on the same subject. *Thunderbasin Land, Livestock & Inv. Co. v. County of Laramie County*, 5 P.3d 774, 782 (Wyo.2000) ("The specific statute controls over the general when they address the same subject.")

[¶ 31] Here, there is a very specific statute dealing with the issue of directing payment for medical examinations for contested case hearings. It states that the hearing officer has discretion to direct payment for an independent medical examination conducted by an impartial health care provider appointed by the hearing officer, but that the parties should bear the expenses of any private physicians they wish to employ. An administrative rule relating to attorney costs generally cannot override this specific statutory language.

[¶ 32] The facts are simply that, in the context of a contested case hearing, Serda employed a private physician to conduct a private physical examination. There is no statutory provision allowing for anyone other than Serda to pay for the expenses associated therewith. The order of the Commission is rightly affirmed.

---

**2.** The fact that Serda and her examining physician chose to refer to the medical examination as an IME is irrelevant to the question of whether the examination complied with the dictates of § 604, which it clearly did not.