2004 WY 108

**William BURD, Appellant (Petitioner),**

v.

**STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent).**

No. 03–207.

Supreme Court of Wyoming.

Sept. 15, 2004.

Representing Appellant: Richard R. Wilking, Casper, WY.

Representing Appellee: Patrick J. Crank, Attorney General; John W. Renneisen, Deputy Attorney General; Steven R. Czoschke, Senior Assistant Attorney General; and Kristi M. Radosevich, Assistant Attorney General.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

LEHMAN, Justice.

[¶ 1] William Burd (Burd) appeals the Wyoming Medical Commission's (Commission) denial of worker's compensation benefits. The Commission concluded that Burd failed to meet his burden of proof that the treatment he received after October 21, 2001, was related to his work injury. The district court subsequently affirmed this decision on review. Burd also appeals the district court's order awarding attorney fees that were lower than the amount claimed and the later denial of a petition for rehearing on the matter. We affirm.

### ISSUES

[¶ 2] Burd phrases the issues on appeal as:

1. Was there substantial evidence to support the findings of fact and the decision of the Medical Commission?

2. Was there an abuse of discretion by the Medical Commission in arriving at its decision dated September 6, 2002?

3. Was the decision of the Medical Commission arbitrary or capricious?

4. Did the District Court, Seventh Judicial District, err in affirming the decision of the Medical Commission?

5. Did the District Court err in awarding only $2,500 for attorney fees where the bill for attorney fees was $6,030?

6. Did the District Court err in denying the Motion for Rehearing on the issue of attorney fees?

### FACTS

[¶ 3] Burd worked for Dennis M. McCoy & Sons Construction Company (McCoy) as a scraper operator removing overburden dirt from a coal seam from the end of May 2001 until September 27, 2001. On August 21, 2001, Burd apparently began to feel chest pains while at work and was taken by company ambulance to the hospital.[1] Burd indicated on his time card that he had not sustained a work-related injury when he signed out

from work that day. However, Burd later explained that on August 21, 2001, he did not know at that time that he might have had a work-related injury. Burd's supervisor, Frank Farris, provided a written statement recounting that Burd stated that he was having chest pains which he had experienced similarly before, "as in months," and that Burd thought he had strained his shoulder and did not mention any back-related injury.

[¶ 4] Upon examination at the hospital, Burd complained of chest pain with impaired use of his left arm but did not report any back or shoulder pain. He also reported having similar chest pain in prior years. Burd was released from the hospital that day and returned to work on his next scheduled shift, three days later. Burd further testified that sometime after August 21, 2001, he reported to a family practice clinic in Casper, Wyoming with complaints of lower back pain, but admitted that he did not complain of any chest pain.[2]

[¶ 5] Burd continued to work at his normal position with McCoy until September 27, 2001, in some cases working more hours than normal. According to a secretary at McCoy, on Monday, October 1, 2001, Burd called McCoy and advised that he had injured his back over the weekend and would not be back to work until he saw a doctor. This secretary further stated that Burd had not previously complained about a back-related injury, nor had he reported any injury or problem other than the chest pains he experienced on August 21, 2001. Burd, however, stated that he advised McCoy that the pain in his back which began while he was at work and caused him to only work half of his shift on September 27, 2001, had gotten worse over the weekend. On October 16, 2001, Burd spoke with McCoy's manager, William Burke by telephone. Mr. Burke testified that Burd stated he would not return to work due to his wife's difficult pregnancy, the fact that his son had recently undergone surgery in Denver, Colorado, his need to stay home with his children, and his own back injury.

---

1. During a later medical examination, it was recorded that Burd first began to have these pains that morning while at home in bed.

2. No documentary evidence of this medical visit was presented to the Commission at hearing.

Burd also stated that he could not work out of town due to these family issues. Burd did not mention any work-related injuries and did not provide a date that he would be able to return to work. These same facts were noted in a statement made by the secretary at McCoy who also spoke with Burd over the telephone on October 16, 2001.

[¶ 6] On October 21, 2001, Burd's brother and a friend brought two deer to Burd's home because his brother wanted to hang the deer in Burd's shed. According to Burd, when he tried to assist his brother by throwing a rope over a rafter in his shed, he experienced terrible chest pain similar to what he had felt on August 21, 2001 at work. Burd reported to the emergency room and it was recorded that Burd indicated that the chest pain began "after he helped drag out a deer." Burd also stated that he had experienced a similar episode two months previously, but did not report that the past episode was work related. Records of this visit also indicate that Burd reported that he had previously gone to Wyoming Family Practice for a back injury. The emergency room diagnosis was acute chest wall pain and left shoulder pain. Burd was then discharged and referred to an orthopaedic physician. Later, Burd denied advising the hospital that he had "helped drag out a deer," but merely experienced his severe chest pain after he attempted to throw a rope over a rafter to hang the deer. He further testified that he had been experiencing some ongoing chest pain prior to the incident, but felt a significant increase in his chest pain, arm tingling, and hand numbness upon throwing the rope over the rafter.

[¶ 7] On October 23, 2001, complaining of pain in his chest, Burd saw Dr. Thomas Landon, an orthopaedic physician. Burd stated that two months previously he began to experience this pain while he was driving heavy equipment, but Burd did not identify any specific history of this injury. Upon conducting an MRI, Dr. Landon ruled out a suspected rotator cuff injury. He then referred Burd to Dr. Mary MacGuire for evaluation of chest wall pain. Burd reported no particular trauma for the cause of his chest pain, although he reported his chest pain began in August 2001, when he awoke with chest pain. Upon examination of Burd's chest wall, Dr. Mary MacGuire could not isolate the cause of Burd's chest pain. She then referred Burd to her sister, Dr. Anne MacGuire, a rheumatologist.

[¶ 8] On November 20, 2001, Burd filed a report of injury with the State. The State paid temporary total disability benefits and medical care and treatment benefits through October 23, 2001. Later, on December 10, 2001, Dr. Anne MacGuire wrote the State a letter advising that when Burd reported to her office, he explained that he instantly felt an explosion in his chest and neck and his left arm went numb while he was at work on August 21, 2001. In her report, Dr. MacGuire also indicated that Burd had been experiencing chest pain since August 21, 2001, "which is anterior and posterior straight through to about T7." An MRI of the cervical spine was unremarkable so Dr. MacGuire treated Burd with trigger point injections and returned Burd to work at full duty without restrictions.

[¶ 9] In January of 2002, Dr. Anne MacGuire wrote another letter to the State. In this letter, Dr. MacGuire indicated that Burd had clearly been injured on the job on August 21, 2001. However, she questioned whether Burd's current treatments were related to that injury or an October 21, 2001, incident wherein Burd assisted his brother and a friend with some deer. Dr. MacGuire also suggested that a thoracic MRI be performed, but questioned if that test should be covered by the State.

[¶ 10] On January 16, 2002, the State rendered a final determination denying benefits that Burd had claimed after October 21, 2001. On January 23, 2002, Burd saw Dr. Robert Narotzky, a neurosurgeon at Central Wyoming Neurosurgery.[3] A thoracic MRI, CT scans, and a discogram were performed which showed a syrinx cavity from T3 through T7, small central disk protrusion and annular fissures and tears. In particular, it was noted that there were annular fissures with leaking primarily on the left side with

---

3. No documentation from Dr. Narotzky was pro-    vided at the hearing.

no contrast extravasation at T4 through T5 with no pain response, annular fissures with contrast leakage at T5 through T6 with a partial concordant pain response, leaking of contrast through annular tears with discordant pain response at T6 through T7, and a dorsal annular fissuring bilaterally more pronounced on the right side and small right sided annular tear with leaking contrast at T7 through T8. In April 2002, Burd saw Dr. Tuenis Zondag, also of Central Wyoming Neurosurgery, whose area of expertise included occupational and pain medicine. For the first time, Burd then complained of a radiating pain that ran down his left leg.

[¶ 11] During his deposition, Dr. Zondag stated that it was his expert medical opinion that Burd's thoracic disc problems were caused by his work at McCoy. He further stated that this opinion would not change based upon any heavy equipment work Burd may have performed in the past, any activity involving dragging a deer, and the syrinx condition of Burd's thoracic spine. However, cross-examination revealed that Dr. Zondag lacked knowledge of Burd's post-August 21, 2001 incident, Burd's work history, and other non-work activities. After epidural injections were unsuccessful, it was determined that surgical intervention would be required.

[¶ 12] After hearing, the Commission entered its decision finding that Burd's demeanor at the hearing was inconsistent with his pain complaints. The Commission also found that Burd's symptoms and pain complaints were not medically consistent with any thoracic spine abnormalities. Specifically, it was concluded that 1) Burd's arm and hand symptoms were not medically consistent with the radiographic findings of abnormalities in the thoracic spine, 2) the majority of abnormal findings in the thoracic spine

were right sided while Burd's complaints involve the left side, 3) no electrodiagnostic testing of the thoracic spine had been performed to determine if any abnormalities in the thoracic spine were causing the claimed symptoms, and 4) Burd's low back and lower extremity radicular symptoms were not consistent with any thoracic spine abnormalities. The Commission also noted that substantial evidence had been presented to indicate that Burd's complaints may not be attributable to the incident that occurred on August 21, 2001, while he was working at McCoy. Therefore, the Commission concluded that Burd had failed to prove he was entitled to worker's compensation benefits after October 21, 2001. This determination was affirmed by the district court.

[¶ 13] At the conclusion of the district court proceedings, Burd's counsel submitted a request for the payment of fees and costs in the amount of $6,030.00. The district court found that the requested fee substantially exceeded other fees in similar cases and that the issues presented on appeal were neither novel nor complex. Hence, the district court reduced the fees and costs award to the amount of $2,500.00. Subsequently, the district court denied the petition for rehearing on the matter filed by Burd's counsel. This appeal followed.

### STANDARD OF REVIEW

[¶ 14] We stated the applicable standard of review in *Ludwig v. State ex rel. Workers' Safety and Compensation Div.*, 2004 WY 34, ¶¶ 5–6, 86 P.3d 875, ¶¶ 5–6 (Wyo.2004) (footnote in original):

The parameters for judicial review of an agency action are found in Wyo. Stat. Ann. § 16–3–114.[4] *Serda v. State ex rel. Work-*

---

4. Wyo. Stat. § 16–3–114(c) (LexisNexis 2003):

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and
(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
　(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
　(B) Contrary to constitutional right, power, privilege or immunity;
　(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

ers' *Safety and Compensation Div.*, 2002 WY 38, ¶ 18, 42 P.3d 466, ¶ 18 (Wyo.2002). Our standard of review when reviewing administrative agency action was clarified and refined in the case of *Newman v. State ex rel. Workers' Safety and Compensation Div.*, 2002 WY 91, 49 P.3d 163 (Wyo.2002). That case held that "the substantial evidence test is the appropriate standard of review ... when factual findings are involved and both parties submit evidence." *Newman*, at ¶ 22.

In appeals where both parties submitted evidence at the hearing below and the dispute is over the soundness of the factual findings of the agency, *Newman* mandates the appellate review be limited to application of the substantial evidence test. *Id.* This is true regardless of which party appeals from the agency decision. The substantial evidence test provides:

> In reviewing findings of fact, we examine the entire record to determine whether there is substantial evidence to support an agency's findings. If the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. It is more than a scintilla of evidence.

*Newman*, at ¶ 12 (quoting *State ex rel. Workers' Safety and Compensation Div. v. Jensen*, 2001 WY 51, ¶ 10, 24 P.3d 1133, ¶ 10 (Wyo.2001)). This court is required to review the entire record in making its ultimate determination on appeal. *Newman*, at ¶¶ 19 and 24–26.

## DISCUSSION

### Sufficiency of the Evidence

■ [¶ 15] Burd presents four separate arguments that he is entitled to worker's compensation benefits. However, upon our review, we find that Burd essentially asserts

(D) Without observance of procedure required by law; or

that insufficient evidence existed to support the Commission's ruling, which was later affirmed by the district court. Thus, Burd argues that both the Commission and the district court erred in rendering their respective decisions.

[¶ 16] Initially Burd argues the Commission accepted Dr. Anne MacGuire's opinions and based its ultimate decision thereon, despite the fact that these opinions were rendered without benefit of the critical medical tests and founded upon a faulty assumption. Hence, Burd contends that Dr. Anne MacGuire's testimony must be considered irrelevant and cannot be used as the basis for the Commission's determination. A closer look at the Commission's determination, however, evidences that it was not totally based on the opinion of Dr. Anne MacGuire, but multiple factors. In its decision, the Commission recognized that Burd indicated on his time card of August 21, 2001, that he had not incurred a work injury on that date when he signed out from McCoy and that no worker's compensation claim report was submitted by Burd until November 2001. In addition, the Commission stated that according to Burd's immediate supervisor, Mr. Farris, Burd noted on August 21, 2001, that he had similar chest pains previously, "as in months," and that he could have strained his shoulder. Further, Mr. Farris stated that Burd did not mention any back-related injury on that date. Burd then returned to work at McCoy for approximately one month with no complaints and on October 1, 2001, reported that he had hurt his back over the weekend at home. Finally, on October 16, 2001, Burd gave several non-work related reasons for not returning to work, which included the back injury that occurred during his off time.

[¶ 17] The Commission also referred to the secretary's statement. The Commission noted the secretary advised that Burd had telephoned McCoy on October 1, 2001, stating that he had hurt his back over the prior weekend and that he would not be returning to work until he saw a doctor. In a later telephone conversation, the secretary advised

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

that Burd stated he would not be able to return to work because of his wife's pregnancy, his having to tend to his other children, his son's surgery, and his back injury. Additionally, this secretary noted that Burd had not previously complained of back pain. Burd also spoke with Mr. Burke, McCoy's manager, on October 16, 2001. Burd similarly advised Mr. Burke. Burd did not mention any work-related injury at that time.

[¶ 18] When reporting to the hospital on August 21, 2001, Burd reported that he had felt similar chest pains years previously, but denied any radiating pain or shoulder or back pain. Burd testified that days later he went to see a family practice clinic in Casper for complaints of lower back pain, but admitted that he did not complain of any chest pain. On October 21, 2001, Burd reported to the emergency room at the Wyoming Medical Center in Casper, the city in which Burd resided. At this time, the hospital recorded that Burd began to experience chest pain that day after "he helped drag out a deer." It was also recorded that Burd had experienced similar pains two months earlier, however, no mention was made that this prior episode was work related. Later, Burd testified that he did not "drag out a deer," but felt severe chest pain when he threw a rope over a rafter to hang a deer. This chest pain was accompanied by his arm tingling and hand numbness. Two days later, Burd reported to Dr. Landon with chest pain, and stated that two months previously he began having pain in his chest. Nevertheless, Burd did not recount any specific history of an injury.

[¶ 19] The Commission further noted that on November 27, 2001, Burd was seen by Dr. Mary MacGuire for chest pain. She reported that Burd had no particular trauma for the cause of his pain and that Burd's difficulty began on August 21, 2001, when he awoke with this pain. Burd was then seen by Dr. Anne MacGuire on December 10, 2001, where he recounted for the first time that his scraper was hit by another scraper doing thirty miles an hour whereupon he instantly felt an explosion in his chest and neck and his left arm went numb. Later, on December 12, 2001, Burd complained of stiffness in his neck, reduced range of motion in his cervical spine without pain, and back pain. Burd's back pain was improved with a trigger point injection, and Dr. MacGuire returned Burd to work.

[¶ 20] No records were presented of Burd's consultation with Dr. Narotzky. Dr. Zondag reported that Burd had tried to return to heavy equipment work but was only able to work a couple of weeks before his pain became so bad that he was unable to continue. However, this testimony was contrary to other evidence presented, including Burd's own testimony. Later, when Burd returned to see Dr. Zondag on May 1, 2002, Burd reported that the last epidural he received reduced his mid-back pain. However, Burd reported new lower back pain without radiation into his legs. At that time, Burd showed minimal pain in his thoracic spine and discomfort in his lower lumbar region. Dr. Zondag then diagnosed Burd's lumbar pain as muscular and felt that Burd could return to work in approximately two weeks. On May 16, 2002, Burd reported relief from his prior epidural injection for only a few days. He then complained of lower back pain radiating into his legs. Dr. Zondag later opined that Burd's injury was clearly work related. Nonetheless, Dr. Zondag admitted on cross-examination that he was unaware of Burd's post August 21, 2001, work history, and was not familiar with his prior employment or Burd's non-work activities.

[¶ 21] Finally, the Commission found that Burd's physical actions during the hearing were inconsistent with his reported physical difficulties, that Burd's arm and hand symptoms were not medically consistent with the radiographic findings of abnormalities in the thoracic spine, and that the majority of abnormal findings in the thoracic spine were right sided, while Burd predominantly complained of left side problems. The Commission also held that there was not sufficient electrodiagnostic testing of Burd's thoracic spine to determine if any abnormalities in that area were in fact causing the claimed symptoms, and that Burd's complaints of low back pain and lower extremity radicular symptoms were not consistent with any thoracic spine abnormalities.

[¶ 22] We conclude the Commission relied upon the many inconsistencies that appeared throughout the hearing, and did not exclusively rely upon the opinion of Dr. Anne MacGuire. Moreover, our review of the entirety substantiates each of the facts recognized by the Commission. These facts fully support the Commission's ultimate conclusion that Burd did not meet his burden of proof that his injuries were work related. Although we readily admit that some of the evidence presented did support Burd's contention that his injuries were attributable to the August 21, 2001 incident while at work, most notably the testimony of Dr. Zondag, we cannot conclude that the Commission erred in its determination. Substantial conflicting evidence was presented that Burd's injuries may have not been work related as claimed. Likewise, we must also conclude that the district court correctly affirmed the Commission's decision for the same reasons.

[¶ 23] Burd argues that the Commission relied upon irrelevant, inconsequential, and conflicting evidence to support its determination. We do not agree with this characterization. To the contrary, this evidence, in its totality, constituted substantial evidence to support the denial of benefits. It is well established in Wyoming that:

> An employee-claimant in a worker's compensation case has the burden to prove all the statutory elements which comprise a compensable injury by a preponderance of the evidence. *Hanks v. City of Casper,* 2001 WY 4, ¶ 6, 16 P.3d 710, ¶ 6 (Wyo. 2001); *Sherwin–Williams Company v. Borchert,* 994 P.2d 959, 963 (Wyo.2000); *Thornberg v. State ex rel. Wyoming Workers' Compensation Division,* 913 P.2d 863, 866 (Wyo.1996). This includes establishing the cause of the condition for which compensation is claimed and proving that the injury arose out of and in the course of employment. *Wesaw v. Quality Maintenance,* 2001 WY 17, ¶ 10, 19 P.3d 500, ¶ 10 (Wyo.2001); *Hanks,* ¶ 6; *State ex rel. Wyoming Workers' Compensation Division v. Espinoza,* 924 P.2d 979, 981 (Wyo.1996). Put another way, the claimant has the burden of following procedures and rules contained within the Wyoming Worker's Compensation Act in order to establish

entitlement to worker's compensation benefits. *Sherwin–Williams Company,* 994 P.2d at 963; *Pittman v. State ex rel. Wyoming Workers' Compensation Division,* 917 P.2d 614, 617 (Wyo.1996).

> To meet the preponderance standard, the claimant must present evidence which leads the trier of fact to find that the existence of the contested fact is more probable than its non-existence. *Sherwin–Williams Company,* 994 P.2d at 963.

*Bruns v. TW Services, Inc.,* 2001 WY 127, ¶¶ 12–13, 36 P.3d 608, ¶¶ 12–13 (Wyo.2001). We have similarly established that upon our review of the entire record, if the agency's decision is supported by substantial evidence, we cannot properly substitute our judgment for that of the agency and must uphold the findings on appeal. *Ludwig,* at ¶ 6. Thus, we will not substitute our judgment here.

### Attorney Fees

[¶ 24] As stated previously, after the district court affirmed the Commission's determination on appeal, Burd's counsel submitted a request for attorney fees and costs in the amount of $6,030.00. The district court reduced the fees and costs award to $2,500.00. Later, the district court denied the petition for rehearing. Burd contends that the district court abused its discretion in making these rulings.

[¶ 25] When faced with a request for the payment of attorney fees and costs, the district court must first apply the "lodestar" test, which starts with the determination of the fees calculated as a product of reasonable hours multiplied by a reasonable rate. Thereafter, the court may make discretionary adjustments to the "lodestar" amount upon consideration of the following factors:

1. The novelty and difficulty of the questions posed in the case;
2. The skill requisite to perform the legal services properly;
3. The preclusion of other employment by the attorney due to acceptance of the case.
4. The customary fee;
5. Whether the fee is fixed or contingent;

6. Time limitations imposed by the client or other circumstances;

7. The amount involved and the results obtained;

8. The experience, reputation, and ability of the attorney involved;

9. The undesirability of the case;

10. The nature and length of the professional relationship with the client; and

11. Awards received in similar cases.

See *Moncrief v. Harvey*, 816 P.2d 97, 109 (Wyo.1991).

[¶ 26] On August 15, 2003, Burd's counsel filed a very summary motion for award of attorney fees and costs that included an accounting of the services rendered and the time incurred for those services. The total hours submitted were sixty-seven, with this time being billed at the rate of $90.00 per hour, for a total of $6,030.00. This motion was unopposed. However, the district court entered its order on September 4, 2003, reducing the award of attorney fees to $2,500.00. On September 9, 2003, the district court explained its ruling in a decision letter. That letter explained that, after considering the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir.1974) and *Moncrief*, 816 P.2d at 109, it had determined that the questions presented by the case were neither novel nor difficult, characterizing the issue as a sufficiency of the evidence argument. The district court also found that the applicable case law was relatively straightforward, that Burd did not prevail, and the requested fees substantially exceeded other fees in similar cases. Finally, the district court stated that the other *Moncrief* factors were either not significant or were non-existent.

[¶ 27] Following the district court's order granting attorney fees and costs, Burd's counsel filed a petition for rehearing and brief in support of the petition. Included with the petition was the affidavit of an independent attorney attesting to the reasonableness of the requested attorney fees and an affidavit prepared by Burd's counsel further explaining the attorney fees charged with a detailed billing. The State submitted a response and an affidavit in opposition. There-

after, the district court, without hearing, denied the petition because it found the petition submitted no new information or authority and it was not convinced that its previous analysis was erroneous.

[¶ 28] We hold there was adequate evidence presented for the district court to conclude as it did. The district court specifically indicated that it applied each of the factors set forth in *Moncrief v. Harvey*, 816 P.2d at 109. The fact that the district court did not specifically enumerate its findings on each separate factor, but simply stated that it found 1) that the questions presented by the case were neither novel nor difficult, 2) that the applicable case law was relatively straight forward, 3) that Burd did not prevail, 4) that the requested fee substantially exceeded other fees in similar cases, and 5) that the other *Moncrief* factors were either not significant or were non-existent, adequately explained the district court's ruling. We, therefore, hold that the district court did not abuse its discretion when rendering its decision and affirm the award of attorney fees.

[¶ 29] Likewise, we hold that the district court correctly found that the petition for rehearing filed by Burd's counsel offered no new information or authority. We further conclude that even upon review of the petition, no additional information was presented to show that the district court's initial analysis as to attorney fees was in error.

[¶ 30] We have often set forth that judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. In the absence of an abuse of discretion, we will not disturb the district court's determination. *Kitzke v. State*, 2004 WY 9, ¶ 5, 84 P.3d 950, ¶ 5 (Wyo. 2004).

### CONCLUSION

[¶ 31] We conclude that sufficient evidence existed to support the Commission's

determination, and the district court did not err when it affirmed the Commission's decision. We also hold that the district court did not abuse its discretion when it reduced the request for attorney fees and costs and sub- sequently denied the motion for reconsideration.

[¶ 32] Affirmed.